The indictment in this case charged the appellant with having "forcibly ravished Patricia Harper." The jury returned a verdict of guilty of the lesser included offense of assault with intent to ravish. Thereafter, the trial judge set sentence at fifteen years imprisonment in the penitentiary. Appellant's timely motion for a mistrial was overruled.
From the evidence presented by the State at trial, it appeared that the following events transpired in Madison County, Alabama, on the night of May 24th and 25th, 1977:
About 11:00 p.m., Patricia Harper went to a local bar in Huntsville where she met one Michael Hand. Mr. Hand invited Mrs. Harper to smoke some marijuana with him, and the two of them went outside to the parking lot. There Mr. Hand introduced Mrs. Harper to the appellant. The group of three decided to take Mrs. Harper's automobile to the appellant's home. On the way one marijuana cigarette was smoked by the three of them. Mrs. Harper examined the appellant's driver's license before allowing him to drive her automobile and recalled his name and age. Near Monte Sano Boulevard, *Page 379 
the appellant turned right off the main road onto a gravel road and drove a few hundred yards, then stopped. The appellant got out of the driver's side of the automobile and told Mrs. Harper to get out of the passenger's side. The two of them walked away from the automobile to the rear while Mr. Hand remained in the back seat. Shortly later, Mr. Hand heard screams and went to investigate. He found Mrs. Harper sprawled on the ground with the appellant standing over her. Mrs. Harper claimed that the appellant had tried to strangle her. Mrs. Harper testified that the appellant raped her. The appellant drove away in Mrs. Harper's automobile, leaving Mr. Hand and Mrs. Harper. The two of them managed to flag down a passing motorist who subsequently delivered them to the police. Examination of Mrs. Harper at Redstone Arsenal Hospital resulted in a negative finding in a test for the presence of spermatozoa, but a more sensitive test for the presence of acid phosphatase, an element of male seminal fluid, yielded positive results which indicated probable coitus within twenty-four to forty-eight hours of examination.
 I
At trial the State was allowed to introduce twelve police photographs of six people which had been used by the arresting officer, Bell, in obtaining an identification of the appellant from Mrs. Harper and Mr. Hand. Several days after the incident, both witnesses identified photographs of the appellant as being one of the group of six suspects. The photographs of the appellant depicted the subject in the standard profile and frontal views. Hanging from the appellant's neck was a placard bearing the following words and numbers (R. p. 125):
 POLICE DEPARTMENT HUNTSVILLE, ALABAMA 1 — 13 — 75 056567
When the State offered the photographs into evidence, the defense objected as follows (R. p. 75):
 "MR. CHESNUT: Your Honor, we object to the photographs. Been no proper foundation as to when the identification was made, whether it was contemporaneous with or days passed the actual incident.
 "THE COURT: Overruled. You are moving to admit 2 through 7?
"MS. ANDERSON: Yes, your Honor.
"THE COURT: They are admitted."
Subsequently the defense amended its ground of objection to the photographs (R. p. 82):
 "Judge, this may be to my own detriment, the pictures, I objected to the time they were taken. I didn't object to the content, but the picture of Holsclaw is a police picture and shows he was booked in, it's got the numbers on it, and everything. I would like to register an objection to the entry of that based on that fact."
"THE COURT: Overruled."
These photographs were admitted into evidence notwithstanding the fact that there was a prior positive in-court identification of the appellant by both Mrs. Harper and Mr. Hand. We note specifically that both of these identifications appeared to be especially reliable since Mr. Hand had previously known the appellant and Mrs. Harper had examined the appellant's driver's license just prior to the incident.
On further examination of arresting Officer Bell, the State went into an oral statement made by the appellant to Officer Bell after Miranda warnings had been given. On voir dire examination, out of the presence of the jury, defense counsel elicited the following testimony from Officer Bell relating to the appellant's statement (R. p. 78):
 "So he told me, says, the first statement he made was, `I'm a homosexual.' Then he says, `I'm bi-sexual,' and he said that Michael Hand was the one that did this, and he was going to get some help; and, on the way down the mountain, he got to *Page 380 
thinking about his prison record, so he just kept going, and that was it.
"Q. That was the sum total of the statement?
"A. Yes, sir.
 "MR. CHESNUT: Your Honor, we would move to exclude that statement as having no probative value whatsoever on the issue; and, furthermore, the statement about the prison record, his personal sexual preferences would be highly prejudicial.
"THE COURT: Overruled.
 "MR. CHESNUT: Judge, could we ask then the reference to the prison record to be stricken from the statement?
 "THE COURT: Well, I think the function of the Court is to make some ascertainment at this stage of the voluntary statement without force or coercion; and, once that determination is made, the Court then doesn't extract any portion of the statement."
After the jury was recalled to the courtroom, Officer Bell restated the substance of the appellant's statement. At this point, defense counsel stated (R. p. 80):
 "MR. CHESNUT: Your Honor, at this time I am going to object to the statement offered into evidence and ask for instructions regarding the admissibility of the statement; and, in the alternative, move for a mistrial.
"THE COURT: Overruled."
On this appeal the appellant asserts that the trial court erred in admitting the "mug shots" or "rogue's gallery" photographs of the appellant and in allowing the above-quoted testimony into evidence concerning the appellant's statement. After careful examination of the record in this case and the applicable law, we conclude that the errors complained of did injuriously affect the substantial rights of the appellant. Accordingly, for the reasons hereinafter expressed, we reverse and remand the case to the trial court for a new trial.
On appeal the State asserts that the "mug shots" of the appellant were admissible under the so-called "identity exception" to the general rule that evidence of collateral offenses is inadmissible at trial of another unrelated offense. We do not agree.
In Scott v. State, Ala.Cr.App., 353 So.2d 36 (1977), this Court followed the applicable rule expressed by the Supreme Court of Alabama in Williams v. State, Ala.Sup., 350 So.2d 708. In that case the Supreme Court, per Mr. Justice Faulkner, stated:
 "The issue presented is, does a plea of not guilty, where the defendant offers no other defense, and where the witness made a positive identification based upon her observation of defendant at the first robbery, place his identity in issue, so as to justify admission of a separate and distinct subsequent offense. The answer is no. . . ." (Williams, supra, at 709)
In the instant case, the appellant, not having taken the stand and having been identified positively in court by two witnesses, did not place his identity in issue. It follows, therefrom, that the "identity exception" relied upon by the State in asserting the photographs' admissibility is inapposite here.
The appellant also relies upon the case of United States v.Harrington, 490 F.2d 487 (2d Cir. 1973), wherein the United States Court of Appeals for the Second Circuit enumerated three prerequisites to a ruling that the introduction of "mug shot" type photographs does not result in reversible error:
 "1. The Government must have a demonstrable need to introduce the photographs; and
 "2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
 "3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs." (Harrington, supra, at 494)
More recently, in United States v. Bowers, 567 F.2d 1309 (5th Cir. 1978), the United States Court of Appeals for the Fifth Circuit adopted the analysis used in the *Page 381 Harrington case. In Bowers, supra, the court cited another of its own opinions, United States v. Rixner, 548 F.2d 1224 (5th Cir. 1977), cert. denied, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248, wherein it was stated:
 "This Court finds that the photographs were erroneously admitted, but constitute only harmless error in light of the strong evidence otherwise introduced regarding defendant-Jones' participation in the conspiracy and identification of him by other witnesses and the in-court identification of him by Mrs. Willard [Citations omitted] . . . However, the assistant United States Attorneys and other government prosecutors should take heed regarding the introduction of mugshots during trial and if this practice is continued, future cases may very well be reversed [Citation omitted]. . . ." (Emphasis supplied) Rixner, supra, at 1226.
It is noteworthy that the photographs used at trial in theRixner case had been carefully "doctored" so that the prejudicial words and numbers were not visible to the jury. See also UnitedStates v. Davis, 487 F.2d 112 (5th Cir. 1973), cert. denied,415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878.
In the instant case, this Court will follow the analysis adopted by the United States Court of Appeals for the Fifth Circuit in the Bowers case, i.e., the Harrington analysis. In applying this analysis, we find that (1) the State did not have a demonstrable need to introduce the photographs in light of the two reliable in-court identifications; (2) also, the photographs in question depicted the appellant in such a way that the jury could reasonably infer that he had a prior criminal record; and (3) the manner of introduction at trial drew particular attention to the source or implications of the photographs themselves. Thus, having failed to pass all three prongs of the Harrington
analysis, the introduction of the photographs into evidence constituted reversible error.
 II
In asserting that the trial judge did not err in admitting arresting Officer Bell's testimony concerning the appellant's statement, the State again relies on the so-called "identity exception" noted in Part I of this opinion. For the reasons therein stated, we feel that application of the "identity exception" is inappropriate in this case. Officer Bell's testimony contained irrelevant material which had no probative value, other than proving the existence of prior offenses.Madison v. State, 40 Ala. App. 62, 109 So.2d 749 (1958), cert.denied, 268 Ala. 699, 109 So.2d 755.
The references therein to the appellant's sexual preferences should have been excised by the trial court. The reference to the appellant's prison record only served to get before the jury indirectly information which the State, by virtue of the appellant's not having taken the stand, was forbidden to present directly. Williams v. State, Ala.Sup., 350 So.2d 708; Scott v.State, Ala.Cr.App., 353 So.2d 36 (1977). It is fundamental that the accused in a criminal trial is entitled not to have his prior criminal record brought before the jury if he chooses not to take the witness stand, and if the evidence of collateral offenses does not specifically fit within an enumerated exception to the general rule of exclusion. McMurtrey v. State, 37 Ala. App. 656,74 So.2d 528 (1954); Hinkle v. State, 50 Ala. App. 215,278 So.2d 218 (1973).
For the errors hereinabove enumerated, the judgment is reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.
DeCARLO, J., in result only. *Page 382