LEIGH M. CLARK, Retired Circuit Judge.
Defendant (appellant) was charged in an indictment with robbery upon Victoria Dawson, while the defendant “was armed with a deadly weapon or dangerous instrument, to-wit, a pistol, in violation of Section 13A-8-41 of the Code of Alabama.” According to the Alabama Criminal Code, effective January 1, 1980, now codified as Title 13A of the Code of Alabama 1975, § 13A-8-41(a)(l), (c) the conduct alleged is one method of committing the crime of robbery in the first degree and is a “Class A felony.” A Class A felony is punishable by imprisonment “for life or not more than 99 years or less than 10 years.” § 13A-5-6. A jury found defendant guilty as charged, and the court sentenced him to imprisonment for twenty years.
The victim, twenty years of age, and Jeff Bonham, sixteen years of age, testified that *387 a short time after midnight February 2-3, 1980, while they were watching T.V. in the office of the Highway Host Motel on the Mobile Highway in Montgomery, defendant committed the alleged robbery.
Miss Lawson testified that she went on duty about 11:00 P.M. that night and was apparently in charge of the office and lobby. She said that she had put about one hundred and fifty dollars in the cash register, that while she was getting a bag for the defendant for him to get some ice, “he pulled out a gun and told me to hit the floor.” She said that as she was complying “he shot me.” According to her further testimony, the shot entered her shoulder and came out her back; the defendant told Jeff to open the cash register and then she heard Jeff open the cash register and the defendant tell him to hit ’the floor, and she saw Jeff go down on the floor. Defendant obtained the money from the cash register and left.
According to the testimony of Jeff Bon-ham, he and his family were guests at the hotel at the time. He saw the defendant when he entered; he heard the shot that was fired, and he then turned around and saw Miss Lawson lying on the floor. The defendant then grabbed Jeff by the arm, told him to open the cash register, which he did, and then told Jeff to lie down on the floor, which he also did.
There seems to be no controversy as to whether a robbery was committed. The controverted issue was as to the identity of defendant.
Defendant testified that he was not present at the time and place of the robbery, that he had never been to the particular motel, that he had never been in any motel, that he had never owned a .38 pistol, which according to the undisputed evidence was the caliber of the pistol from which the bullet came that passed through the body of Miss Dawson.
No contention is made on appeal that the evidence was not sufficient to support the verdict, and we find no reasonable basis for such a contention.
Appellant’s first insistence on reversible error is based on the ruling of the court overruling defendant’s objection to the admission in evidence of a jacket which was taken from defendant on the day of his arrest, which was the second day after the robbery. According to the evidence for the State, it was the jacket that the robber had on at the time of the robbery. Appellant argues that the seizure of the jacket and its admission in evidence against defendant’s objection was in violation of the principle “that an accused shall not be compelled to give evidence against himself” contained in
Article 1, Section 6, Constitution of Alabama of 1901. Appellant relies exclusively upon Anthony v. State, 30 Ala.App. 425, 7 So.2d 513 (1942). In Anthony, the court was reversed for its admission in evidence, over the objection of defendant, of the testimony of an officer that when Anthony was arrested and taken to prison his shoes were “taken off of him” and taken to the scene of the alleged crime for the purpose of a comparison with tracks there. In considering what was held in Anthony, the record therein was examined by the court in Crump v. State, 43 Ala.App. 136, 181 So.2d 620, 622 (1965), in which it is stated:
“ . .. The record in that case [Anthony v. State] also shows that the same witness testified that the defendant’s shoes were compared with the tracks, and that the shoes and the tracks ‘matched up.’ Error in the Anthony case was predicated on the fact that illegal evidence was used to secure a conviction, and not solely on the fact that a law enforcement officer committed an unlawful act by taking the accused’s shoes for evidentiary purposes. The facts of this case are clearly distinguishable from those in the Anthony case. Here, neither the appellant’s shoes nor any evidence obtained as a result of taking the shoes from him was used to secure the conviction. No error can be predicated on the violation of Article 1, Section 6, of the Constitution of Alabama of 1901, under the facts of this case.”
Neither Anthony nor the distinction made in Crump between Anthony and Crump is applicable here. The case here is governed *388 by principles that distinguish it from both Anthony and what was said in Crump to distinguish it from Anthony, that are found with a collation of authorities in the opinion on second rehearing in Hubbard v. State, 283 Ala. 183, 194, 215 So.2d 261 (1968), in which it is stated:
“The opinion on original deliverance suggests the proposition that if the clothes of the instant defendant had been manually and forcibly removed from his body by police officers, then the clothing would have been admissible in evidence, but that, because defendant was compelled to remove his clothes himself with his own hands, then he was compelled to give evidence against himself and the evidence thus given, i. e., the clothing and hairs, is not admissible because it was compelled in violation of the constitutional privilege. We do not think that this proposition is sound. The privilege is against being compelled to be a witness or give evidence against self. If the clothes of defendant are taken from him forcibly and manually by police officers, he is compelled to surrender the clothes and thus give evidence against himself just as much as if, as in the instant case, he is compelled by the show of overwhelming force to take off the clothes and surrender them himself. Where the police officers manually removed the clothes, the force is actually exercised. Where defendant removes the clothes himself, the force is merely threatened to be exercised. In either case, defendant is compelled, and the evidence is equally admissible or inadmissible. The defendant is not compelled in either case to be a witness against himself. He is not the witness, the clothing is.
“In the instant case, we are of the opinion that defendant’s clothing and the hairs from his body were real or physical evidence and were not evidence of a testimonial or communicative nature. Accordingly, we hold that admission of the clothing and hairs into evidence did not violate defendant’s privilege under the constitution which guarantees that, in a criminal prosecution he shall not be compelled to give evidence against himself.”
Hubbard v. State is dispositive of appellant’s contention.
Appellant’s next insistence on reversible error is directed at the refusal of the trial court to grant defendant’s motion for a mistrial that occurred during cross-examination of the defendant as a witness for himself. Counsel for the State was interrogating the witness with reference to his conviction in a previous case, in which the conviction was based upon his plea of guilty, in which apparently there had been a previous mistrial by reason of the jury’s inability to agree on a verdict. The transcript shows:
“Q. Oh, some of it was yours.
“A. Yeah.
“Q. A trash can_
“A. The trash, can was mine.
“MR. POOL: Your Honor, at this time, we would offer to introduce the whole transcript of that trial during which the jury did not convict the defendant.
“MR. BELL: I believe it was ten to two for conviction, Mr. Pool.
“MR. POOL: Your Honor, we move for a mistrial_
“MR. POOL: It was a mistrial.
“MR. POOL: We move for a mistrial on Mr. Bell’s statement.
“THE COURT: The jury step inside.”
Thereupon an in camera hearing was conducted, in which the court said to the attorneys in part:
“All right. I am going to instruct the Jury to — I’m not going to grant a mistrial. I am going to deny that, and the reason I am not is both of you all proceeded and got into the area, improper as to both of you, and I would view Mr. Bell as having to make some response as a result of that. You both got into it and got to carrying it too far, so I am going to have to instruct the Jury to disregard the testimony of both of you at this point.”
Soon thereafter the trial was resumed in the presence of the jury, and the court instructed the jury at length on the subject. Included was the following:
*389 “And I’m instructing you that that’s the only purpose in getting into details of something that is not proper and somehow both sides got into those details, and I am going to state to you to just completely disregard that line of testimony.”
Notwithstanding the impropriety of the remarks made by counsel for the State that the jury had “ten to two for conviction,” it was obviously provoked to some extent by the immediately preceding statement of counsel for defendant that “the Jury did not convict the defendant.” The trial court correctly appraised the situation. We agree with it that defendant’s motion for a mistrial should have been denied, as it was.
During the testimony of Berry Miles, a witness for defendant, who lived next door to defendant and who testified that he was at defendant’s house the night of the alleged robbery, the following occurred on cross-examination:
“Q. You never have. Did you go over to Mr. Rudolph’s house on this Friday night, did you go over there to drink? Do you buy your liquor from Mr. Rudolph?
“A. One beer.
“Q. Okay. Does he sell beer over there? Is that why you went over there?
“A. No, that’s not the reason.
“Q. But he does sell beer over there. Right, sells drinks by the shot? .
“MR. POOL: We object to the relevancy of this, Your Honor, and move for a mistrial. How a man drinks or gives drinks to friends doesn’t have anything to do with robbery.
“THE COURT: What is the purpose?
“MR. BELL: Judge, I am going into this witness’ possible condition or state that he might have been in_
“THE COURT: Overrule your objection. For that purpose only.
“Q. You have gone over there and you had purchased some beer from him, and you had gone over there on many Friday nights to purchase beer from him?
“A. No, hunh-uh.
“Q. You had not?
“A. Hunh-uh.
“MR. BELL: Thank you, Mr. Miles.”
Without approving the particular cross-examination, we disagree with the argument that the State was “attempting to secure a conviction based upon another crime other than the crime instantly charged, which is impermissible. Brantley v. State, 294 Ala. 344, 317 So.2d 345; Lucy v. State, [Ala.Cr.App.], 340 So.2d 840.” We are unwilling to ascribe that motive to counsel for the State. The questions along the line could have been more specific, but they were in an area as to which counsel was justified in testing by cross-examination the accuracy of the witness as to when he was with the defendant that night. Furthermore, although we are not certain as to the meaning of the witness’s “hunh-uh,” it appears that it was a negative answer to any questions purporting to elicit evidence to the effect that defendant was illegally engaged in the sale of any intoxicating drinks.
In addition to their in-court identification of defendant as the robber, Victoria Dawson and Bonham testified that they identified him from photographs shown to them by the officers, and thereafter they identified him as one of six men in a police lineup. Their testimony as to their identification by photographs and by the lineup was largely without objection on the part of defendant. However, the witnesses as to such identifications were carefully and critically interrogated, as they should have been, by defendant’s counsel in his valiant effort to show that there had been a mis-identification. There were two sets of photographs shown them, one of which purported to be pictures of former prisoners charged with felonies and the other of former prisoners charged with misdemeanors. Their testimony indicated that defendant’s photograph was not in the felony group but was in the misdemeanor group. The book of photographs was first referred to as “mug book” by counsel for the State. No objection was made to that denomination at the time, and thereafter it was copiously used by both counsel in repeated references *390 to the book or the photographs. Before the State closed its case, it offered in evidence that which was shown the witnesses in the misdemeanor part of the book, marked it as State’s Exhibit 2, and it was admitted in evidence over the objection of defendant. Appellant says that this action of the court constituted reversible error and relies upon Holsclaw v. State, Ala.Cr.App., 364 So.2d 378 (1978).
We cannot overemphasize the importance of adherence to what was held in Holsclaw and the advisability that prosecuting attorneys be always on guard against the danger of injustice toward a defendant by its utilization of pictures that portray defendant as a previous inmate of a jail or of any other kind of a prison.
We think that counsel for the State should not have referred to the book of photographs as a “mug book” in the presence of the jury, but that point was not raised on the trial and is not raised here. We quote a pertinent part of the record upon which appellant bases his assertion of error:
“MR. BELL: We would also offer into evidence that portion of the mug book marked as State’s Exhibit No. 2 that Detective Carmichael stated that he showed to the witnesses Jeff Bonham and Victoria Dawson with leave of the Court to substitute either a Xerox copy of the pictures or a Polaroid or other suitable photocopy of those pictures to the book so the book can go back down to the police station.
“MR. POOL: Your Honor, we object to that and would like to be heard on that ex parte [sic] of the Jury.”
Thereupon, an in camera hearing was conducted in which the following occurred:
“THE COURT: What do you have to say, Mr. Pool?
“MR. POOL: Judge, we object to the introduction of any mug book or any mug pictures. We think any possible probative value is far outweighed by the prejudicial aspect of a mug book or mug pictures. It shows the defendant in police garb, in a police atmosphere, holding a police placket or card or sign in front of him indicating that he is in jail for some reason, and there is a date on it, I believe which shows August, 1979.
“THE COURT: That is pretty current.
“MR. POOL: And Victoria Dawson and Jeff Bonham have stated that they did, in fact, pick the defendant’s picture out of that book, and we think that suffices, and even the officer has testified the alleged victims picked that picture out of the book. And to introduce pictures or the book itself, mug shots, I don’t think would be admissible because it is so very prejudicial to the defendant in this casé. And it’s superfluous; and is not needed. It is repetitious.
“MR. BELL: Judge, Mr. Pool in his opening statement told the jury that the defendant had a record, that he had been convicted of a misdemeanor of buying and receiving or concealing some grocery products, I think as he put, so, it is no secret that defendant has a criminal record. The book has been referred to as a mug book over and over and over again and there was no objection. If the book is not going in — Mr. Pool has been holding up this lineup photograph here that admittedly doesn’t have one man that is as old as the defendant and he is a little shorter, and he is going to say this is their identification process, ladies and gentlemen, and it stinks, or words to that effect—
“MR. POOL: Well, the mere fact that a statement was made in opening argument, that is not evidence. The defendant may not even take the stand as far as that goes, and in this event that would not even be admissible, and here we are showing him as a criminal, or an alleged criminal, some time before the date in question. Now, that doesn’t shed any light on the issue to be decided by the jury.
“THE COURT: In light of the way the case has progressed and the testimony in the opening statement and this being primarily for the purpose of identification, I am going to permit this to go in except *391 the back part here that has the peoples names and various charges and that sort of thing. I feel like that would be inappropriate. I want that removed. I will permit the mug book in for the perusal of whatever the Jury makes of it, and I will permit you to substitute this with either Xerox or whatever so it can be reviewed as to whether I was right or wrong.
“MR. POOL: Judge, you are referring to the three pages that they saw and not any other pages that they didn’t see? Those pages that they didn’t see—
“THE COURT: Well, the fact that it is a book I think it would be unfair to the District Attorney if I didn’t permit the Jury to look through it and see how they picked him out. You know, I don’t think they would ever fully understand unless we did that, so I am going to permit that.
“MR. BELL: Judge, if the Court would prefer, I will just offer the three pages.
“THE COURT: Well, all right. We will do that.
“MR. POOL: Otherwise, Judge, I think the Jury would get the impression that the whole book was viewed.
“THE COURT: All right. You can take those pages out and then we will substitute them later on which preserves your record, I think.
“MR. POOL: Yes, sir, we are still preserving objections to the admission of those three pages.
“THE COURT: You are still objecting to me doing that, and the record will reflect that.
“MR. POOL: Yes sir.
“(Whereupon, three pages from mug book No. 5880 through 5924 were marked for identification as State’s Exhibit No. 2.)
We have no reluctance whatever to follow Holsclaw v. State, supra, but we have great difficulty in the instant case finding a justification for reaching the same result as to the admission in evidence of the photographs that was reached in Holsclaw, as we place in juxtaposition the clarity of Hols-claw with the abstruseness of the circumstances of the instant case.
Some of the circumstances are the same or similar in both cases; many of them are different. There is sameness in fact that at the time of the ruling on the admissibility of the photographs, the defendant had not taken the stand and he had been identified as the person who had committed the alleged crime. There is a marked difference, however, in that at the time of the admission in evidence of the photographs in the other case the real issue was not, as it was in this case, as to the identity of the defendant but whether the defendant actually committed the crime charged. In the instant case it was clear at the time of the admission of the evidence that the only issue was as to the identity of the defendant as the person who committed the crime.
In Holsclaw v. State, supra, it was held that none of the three prerequisites to the admissibility in evidence of “mug shot” type of photographs set forth in United States v. Harrington, 490 F.2d 487 (2d Cir. 1973) was shown, for it is stated in Hols-claw at 364 So.2d 381:
“ ... In applying this analysis [the analysis of Harrington], we find that (1) the State did not have a demonstrable need to introduce the photographs in light of the two reliable in-court identifications; (2) also, the photographs in question depicted the appellant in such a way that the jury could reasonably infer that he had a prior criminal record; and (3) the manner of introduction at trial drew particular attention to the source or implication of the photographs themselves. . . . ”
Although both eyewitnesses of the robbery made an in-court identification of defendant as the robber, it cannot be said that the identification by either was so reliable as to preclude the admission of other evidence as to identity. The reliability of their testimony, particularly that of Bonham was under constant fire from defendant. Defendant’s attorney was able to raise a serious question as to the accuracy of the identification by Bonham by showing that Bon-ham had described the robber as a person with gold teeth. We have no difficulty in concluding that the State had “a demon *392 strable need to introduce the photographs” and thereby it met the first prerequisite of Harrington. We also have no difficulty in concluding that there was nothing in the “manner of introduction at trial” that drew “particular attention to the source or implication of the photographs,” as to which there seems to be no contention to the contrary. Accordingly, we hold that the third prerequisite of Harrington is established in this case.
We have some difficulty in concluding that the “photographs themselves” do “not imply that the defendant” had “a prior criminal record” so as to fulfill the second prerequisite of Harrington, but it is to be noted that the trial court, without being requested to do so by defendant, removed from the view of the jury the back of the photographs, which was at least a step in the right direction for compliance with such prerequisite. Perhaps it would have better insured compliance with the second prerequisite to have had the lower halves of the photographs cut off, thereby removing the legends denoting prisoners or the like and leaving only the front view of the faces and heads of the subjects, which would have been as valuable as evidence as the entire photographs. In the absence, however, of any suggestion to that effect, there is hardly reasonable ground for complaint that the court should have taken it upon itself to have thus changed the photographs.
The transcript does not contain the report of the opening statements of counsel, as they told the jury what they expected the evidence to show. The only reference to the opening statements of counsel for either party is found in the argument of counsel for the State in support of his offer of the photographs in evidence, to the effect that defendant’s counsel in his opening statement had injected into the case the defendant’s prior criminal record. The statement of State’s counsel as to what defendant’s counsel stated was not disputed, and we feel justified in accepting it as correct. It appears that the trial court so accepted it. Although what defendant’s counsel said was not “testimony” as the court called it, it was proper for the court to consider it as causing, partly at least, the State to enter the field of defendant’s criminal record. This, also, distinguishes this case from Holselaw in following what was held in Harrington, which was premised upon an absence of responsibility by the defendant for the injection into the case of the defendant’s prior criminal record. As stated in Harrington at 490 F.2d 490,
“An examination of the issue proceeds from the recognition of a basic tenet of our criminal law. If, at his trial, a defendant does not take the witness stand in his own defense, and if he has not himself been responsible for causing the jury to be informed about his previous convictions, he is entitled to have the existence of any prior criminal record concealed from the jury. .. . ” (Emphasis supplied.)
It appears that it was upon the ground that defendant first brought to the attention of the jury the fact that he had previously been convicted of a misdemeanor that the court based its action in permitting the photographs to be received in evidence. In our opinion, the action was not erroneous.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur, except TYSON, J., who concurs in the result only.