Robbery in the second degree; twenty-five years.
Ms. Donna Myers testified that on the evening of May 5, 1981, she was employed as the manager of Port Oil Station in Mobile, when three black males entered the store. One of the men crawled underneath the counter, one jumped over the counter, and the third stood in front of the cash register. The individual who went under the counter, whom Ms. Myers positively identified as the appellant, ordered the victim to sit down and be quiet or he would kill her. Then the man standing by the cash register removed approximately eighty-seven dollars from the drawer and all three assailants fled.
Sgt. Girard Bolton, Jr., of the Mobile Police Department testified that during his investigation of the robbery he showed Ms. Myers a group of photographs and she picked out a picture of appellant as one of the robbers.
The State rested its case and the appellant moved to exclude the evidence, arguing several grounds, only one of which is presented on appeal. The motion was overruled and the defense rested without presenting any evidence.
 I
Appellant contends that his motion to exclude the State's evidence should have been granted because there was a variance between the allegations of the indictment and the proof offered by the State. The indictment charged that appellant:
 "[D]id in the course of committing a theft of lawful currency of the United States of America, the approximate aggregate value and denomination of the currency being unknown to the Grand Jury, the property of Union 76 Station, use force against the person of Donna Renee Myers, with intent to overcome her physical resistance, while the said Alfred Grace was armed with a deadly weapon, to wit: a gun, in violation of § 13A-8-41 of the Code of Alabama." [Emphasis added]
At trial Ms. Myers stated that she had informed the grand jury of the amount of money taken during the robbery. The record contains a transcript of her testimony *Page 1333 
before the grand jury and it is evident that the grand jury did, in fact, know the value of the currency stolen. Appellant cites James v. State, 115 Ala. 83, 22 So. 565 (1896) for the following proposition:
 "When a fact or name is known or proved to the grand jury, there is no warrant in the law for averring such fact or name is unknown. * * * When it appears on the trial that the fact or name was known, a conviction on such indictment should not be allowed. It becomes a question of variance between averment and proof." 115 Ala. at 86, 22 So. at 567.
An exception to the above rule, however, is stated in Ware v.State, 12 Ala. App. 101, 67 So. 763 (1914), as follows:
 "[Y]et, this rule is subject to the qualification that, if the fact alleged to have been unknown was not, in truth, a material fact, nor made so by the character of the averment, then the result mentioned does not follow, and the defendant would not be entitled to an acquittal, although it did appear on the trial that the fact was known to the grand jury." 12 Ala. App. at 110-11, 67 So. at 767.
Prior to the enactment of §§ 13A-8-40 et seq. of the 1975 Code of Alabama, there was no statutory robbery in Alabama and the offense was derived from the common law. See Cobern v.State, 273 Ala. 547, 142 So.2d 869 (1962); Watts v. State,53 Ala. App. 518, 301 So.2d 280 (1974). Common law robbery required a "taking" of property from the person of another, Wilson v.State, 268 Ala. 86, 105 So.2d 66 (1958), although the amount or value of the property taken was immaterial, Sanders v. State,289 Ala. 224, 266 So.2d 802 (1972); Harris v. State,44 Ala. App. 449, 212 So.2d 695 (1968).
The present robbery statutes, however, do not require a "taking" of property, Marvin v. State, 407 So.2d 576
(Ala.Cr.App. 1981); Ala. Code §§ 13A-8-40 through 13A-8-44
(1975) (Commentary), so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. The operative words of the current robbery statute are "in the course of committing a theft," which includes an attempted theft, Marvin v. State, supra, rather than the common law element of an actual "taking from the person."
In our judgment, therefore, the indictment here sufficiently charged the offense of robbery. The alleged variance between it and the proof in this case related to an immaterial fact, and appellant's motion to exclude was correctly overruled.
 II
On direct examination by the State, Donna Myers positively identified appellant as one of the robbers. She was then asked whether she had previously identified appellant's photograph from a group of pictures shown to her by Sgt. Bolton. She stated that she had picked out appellant's picture from the ones she was shown. On cross-examination, appellant's counsel vigorously challenged the victim's identification of the appellant, questioning her memory and ability to observe the events on the evening of the robbery.
The State then called Sgt. Bolton who identified the group of photographs shown to Ms. Myers. In response to a question by the State concerning how Sgt. Bolton was able to recognize the photo pack, the following occurred:
 "A. [By Sgt. Bolton] I made it up. These are people, I have each one of them in here in my arrest for robbery at one time or another.
 "MR. HUGHES: [Defense counsel] I am going to object at this time to any testimony about these pictures and what he just stated about having people in —
 "THE COURT: Well, I agree with you on what his last sentence about having them — I will instruct the jury to just disregard that and as far as the book itself is concerned, I anticipate — Are you proposing to show that this was the book that was used?
"MR. STEELE: [Assistant district attorney] Yes, Sir.
"THE COURT: All right. Then do that. *Page 1334 
 "MR. HUGHES: Judge, based upon the officer's last statement, I would move the Court for a mistrial.
 "THE COURT: Deny the motion. Jury will completely disregard the last statement. This has to do with the identification by the complaining witness of the Defendant. That's the sole purpose I will permit this book to be presented in evidence. Okay. Go ahead.
 "MR. HUGHES: Judge, if I might for the record, I renew my motion for mistrial.
"THE COURT: I just thought I got through denying it.
"MR. HUGHES: You did, Judge, and then instructed —
 "THE COURT: I deny your motion and instruct the jury to disregard — Go ahead."
Appellant claims that it was error to allow the witness to bolster her in-court identification of the accused by evidence of an earlier extrajudicial identification. He also argues that the photo pack itself, and Sgt. Bolton's testimony concerning it, were erroneously admitted.
Although a witness may not corroborate his in-court identification of the accused by evidence of an earlier out-of-court identification, Aaron v. State, 273 Ala. 337,139 So.2d 309 (1961), cert. denied, 371 U.S. 846, 83 S.Ct. 81,9 L.Ed.2d 82 (1962), the latter evidence is admissible to rebut an inference raised on cross-examination that the identification was incorrect, Aaron v. State, supra; Yarbroughv. State, 105 Ala. 43, 16 So. 758 (1894).
In our judgment, the admission of Ms. Myers' earlier identification falls within the rule stated in Carlisle v.State, 371 So.2d 975, 977-78 (Ala.Cr.App. 1979), as follows:
 "The victim's testimony on direct examination regarding the extrajudicial identification was improperly admitted into evidence. . . . Once the credibility of the victim was attacked on cross-examination, the testimony of the officer regarding the prior identification was properly admitted in rebuttal. This subsequent evidence cured any error in the earlier testimony of the victim."
[Emphasis added]
In order to determine whether the photographs themselves, and Sgt. Bolton's testimony regarding them, were properly admitted, we must apply the analysis of Holsclaw v. State, 364 So.2d 378
(Ala.Cr.App.), cert. denied, 364 So.2d 382 (Ala. 1978). InHolsclaw, this court adopted the following three-part test to determine whether "mug shot" type photographs are admissible:
 "1. The Government must have a demonstrable need to introduce the photographs; and
 "2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
 "3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implication of the photographs." 364 So.2d at 380 (quoting United States v. Harrington, 490 F.2d 487, 494 (2d Cir. 1973).
In our judgment, the State did have a demonstrable need to introduce the photographs in question. Although the witness made an in-court identification of the appellant, its reliability was strongly attacked on cross-examination. SeeRudolph v. State, 398 So.2d 386 (Ala.Cr.App. 1981). The State, therefore, had the right to rehabilitate the testimony of Ms. Myers by showing her ability, on a previous occasion, to point out the accused. See Carlisle v. State, supra; Howell v. State,369 So.2d 297 (Ala.Cr.App. 1978), cert. denied, 369 So.2d 303
(Ala. 1979).
The introduction of the photo pack also passes the second part of the Harrington-Holsclaw test. There was nothing about the photographs themselves, such as arrest date, prison number, or police department designation, see Shiflett v. State,52 Ala. App. 476, 294 So.2d 444 (1973), cert. denied, 292 Ala. 749,294 So.2d 448 (1974), which suggested that appellant had a prior criminal record. In fact, the record reveals the following "rather innocuous," Williamson v. *Page 1335 State, 384 So.2d 1224, 1231, (Ala.Cr.App. 1980), description of the pictures:
 "Q. How many photographs were displayed before Ms. Myers?
 "A. There was [sic] thirty-one. Thirty-one photographs.
"Q. Would you describe the nature of the photographs?
 "A. The photographs are polaroid color photos, snapshots. On each photograph was a picture of a black male and basically that's it."
The record also reveals the following actions on the part of the trial judge to delete some apparently prejudicial notations on the book of snapshots:
 "MR. STEELE: The State would now offer the photo pack into evidence.
 "MR. HUGHES: Judge, I would object to the introduction of that as being prejudicial. Furtherly, there are some objectionable writing on the front of that book, I would call the Court's attention to.
 "THE COURT: Let me see what's on the front of the book. Well —
"WITNESS: That can be removed.
 "THE COURT: I am going to let him remove what's on the sides of the back of the book. I will let him remove it right now. Then, I am going to admit it into evidence for the sole purpose of the identification process. Cause the State has the burden of proving that this Defendant committed the robbery as charged beyond a reasonable doubt and to a moral certainty and that's the purpose I am admitting the book into evidence. All right, Sir."
Without more, Sgt. Bolton's statement that all photographs displayed people "arrest[ed] for robbery at one time or another" does not meet the third test adopted in Holsclaw. The statement, standing alone, does draw particular attention to the source of the photographs. However, on cross-examination of Sgt. Bolton, defense counsel established that his client's photograph was in the book not as a previously arrested or convicted robber, but as a mere suspect who had been photographed, questioned and released. From the record:
 "Q. Officer Bolton, this photograph that you testified about that you took out there in your little book, isn't it a fact that this photograph was taken of this man two or three days before that?
"A. Yes, Sir, that's true.
 "Q. That you had somebody go out and pick him up, not arrest him, but pick him up and take him down to the police department and took the picture?
"A. That's true.
"Q. And, that's the picture you put in there?
"A. Yes, Sir.
"Q. You turned him loose after his picture was made?
 "A. The officers, I assume, I can't say that they did, but I assume that they did.
"Q. And, that's the picture that you have in there?
 "A. Yes, Sir, that's the reason it was the last picture in the book."
Furthermore, the trial court carefully instructed the jury to disregard the officer's comment. The prejudicial effect of the comment was, therefore, cured and appellant's motion for a mistrial was correctly denied. See Barbee v. State,395 So.2d 1128 (Ala.Cr.App. 1981); Hannon v. State, 48 Ala. App. 613,266 So.2d 825 (Ala.Cr.App. 1972).
The fact that the pictures themselves were not standard "mug shots" such as those condemned in Holsclaw, plus the fact that the jury was informed about how appellant's photo actually came to be included in the book distinguishes this case fromHolsclaw and others following it.
The mere fact that officers of the Mobile Police Department had appellant's photograph in their possession does not convey the same damaging impression to the jury as a "mug shot." SeeFarley v. State, 406 So.2d 1045 (Ala.Cr.App.), cert. denied,406 So.2d 1050 (Ala. 1981). By the same token, the fact that appellant was photographed and questioned by the police does not lead to the conclusion that he was a previously convicted felon. Based on the particular circumstances present here, it is our judgment *Page 1336 
that the evidence relating to appellant's identification was properly admitted.
 III
Appellant submitted forty-five written requested jury charges and the trial judge refused them all. Appellant claims that the refusal of three of them constitutes reversible error.
At the conclusion of the court's oral charge, the following occurred:
 "THE COURT: Mr. Hughes, I didn't read any of your charges. I marked them all refused. I considered that I had covered it all in my charge, I hope I did. Do you all have any exceptions to the Court's charge.
"MR. STEELE: The State has no exceptions.
 "MR. HUGHES: Other than we feel that our requested charges were not completely and sufficiently covered and they are correct statements of law."
In Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981), affirmed, 414 So.2d 993 (Ala. 1982), this court held that the "automatic exception" to refused written charges no longer exists. Judge Tyson, writing for the court, stated the following:
 "The proper procedure for preserving the right to assert error on appeal is for the affected party to object and state his grounds. . . .
 "The primary reason for requiring an exception after the trial court's oral charge and before the jury retires is that such requirement might expedite a satisfactory conclusion of the case. Possible errors by the trial court such as inadvertent omissions in its oral charge or refusals of written charges which deal with crucial issues should be brought to the attention of the trial court so that it might cure such errors at that level." [Emphasis added]
Although appellant excepted and stated general grounds for his exception to the refusal of his written charges, he did not, in our judgment, bring to the attention of the trial court those specific areas which he considered had been omitted from the oral charge.
In view of the fact that appellant submitted forty-five requested charges, we do not believe that a generalized exception to the refusal of all of them adequately focused the trial court's attention on those parts of the charge appellant found deficient. In our judgment, counsel must apprise the court of his exceptions with sufficient particularity to enable the judge to isolate the questionable subject areas of the charge and to correct or expand upon those matters. See Johnsonv. State, 141 Ala. 37, 37 So. 456 (1904); Alston v. State,109 Ala. 51, 20 So. 81 (1896).
Because there is no longer an "automatic exception," counsel must point out to the trial court the matters to which he excepts with sufficient particularity to allow the judge to make an informed decision regarding specific subject areas of the charge.
We have examined the questions presented on appeal and have found no error. Therefore, the judgment of the Mobile Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.