McMillan, judge.
Appellant was convicted of the offense of robbery in the first degree and was sentenced, pursuant to the provisions of the Alabama Habitual Felony Offender Act, to life in prison without parole. From said conviction and sentence, this appeal follows. For the reasons outlined below, this cause is due to be affirmed.
On December 11, 1984, a jury verdict was returned in Covington County, Alabama, finding the appellant guilty of the offense of robbery in the first degree, in violation of § 13A-8-41, Code of Alabama (1975). At the sentencing hearing, the State introduced proof of the following pri- or felony convictions:
*21 1. Conviction of second degree burglary pursuant to guilty plea dated August 23, 1974. (Case Number 5424)
2. Conviction of second degree burglary based upon guilty plea entered August 23, 1974. (Case Number 5425)
3. Conviction of second degree burglary pursuant to a guilty plea dated August 23, 1974. (Case Number 5426)
At the sentencing hearing, defense counsel argued to the trial court that since the guilty pleas were entered on the same day and the appellant was sentenced to five years in each case to run concurrently, that the three convictions should “be considered as one offense under the law.” The trial court acknowledged that defense counsel’s argument was “appealing” but concluded “that is not what the statute says.” The court then noted that appellant had “at least” three prior felony convictions and, since the present offense was a Class A felony, the court was “deprived of its discretion” and must sentence the appellant to life imprisonment without parole. From said conviction and sentence this appeal follows.
I
On appeal, appellant raises two issues. The first issue questions the sufficiency of the evidence presented by the State. According to the appellant, his conviction was the result of “atrocious police work in formulating leads to a possible suspect.” In reviewing the sufficiency of the evidence on appeal, this court must consider the evidence in a light most favorable to the State. Walker v. State, 416 So.2d 1083 (Ala.Cr.App.1982). A review of the evidence shows that on the morning of March 4, 1984, between approximately 8:30 and 9:00 a.m., Linda Williford, cashier, was working at the Zippy Mart in Florala, Alabama. She testified that on that morning business was slow and the following occurred:
“And this person came in and went up to the snack counter and he walked back up closer to the check-out counter but he stopped at a little snack part. And he picked up a cookie and laid some change up on the counter and his cookie. It was pennies and a dime, and I counted it out, you know. I rung it up on the register and I started shutting my drawer back and I looked up to say thank you and he had a gun in my face.
“Q. Let me ask you what time of the morning was this?
“A. Around 8:30; between 8:30 and nine.
“Q. Was anyone else at the store during this time?
“A. No.
“Q. After you looked up and saw this pistol in your face, what happened next? “A. Well, when I looked up and saw the pistol in my face he said give me all of your paper money and I opened up the back drawer and gave it to him.
“Q. Did you give him all the money that was in the cash register?
“A. Ño change, just paper money. I gave him all the paper money that was in the drawer.
“Q. What happened after you gave him the money?
“A. He said is that all and I said, yes. And he says you come — he says, is that your car outside and I said no. And then I went — he said you come with me. So I had to go from behind the counter and walk out the door and he made me walk out toward the road.
“Q. Now did he have the pistol pointed at you during this entire time?
“A. Yes, the pistol was pointed toward me.
“Q. Can you describe the pistol?
“A. Yes.
“Q. How did it appear?
“A. What kind was it?
“Q. Tell us what kind it was?
“A. It was a twenty-two pistol.
“Q. What color was it, do you recall? “A. It was a dark color. I couldn’t see the handle but the barrel was a black color.
*22 “Q. Then you walked around the counter and started going out the door, what happened?
“A. I walked around the counter and started out the door and he stopped there at the door, we both stopped there at the door and he was still behind me. And he reached — he went back inside and got his cake off the counter that he had paid for and then went on out the door. And I walked a few feet and then I slowed down and then looked back over my shoulder and he motioned — he waved the gun at me and said keep going. So I kept going.
“Q. All right, then what did he do after you walked on?
“A. After I walked on I glanced back around and he was going around the side of the building.
“Q. What did you do at that time? “A. When I saw that he was going around the side of the building I ran in the store, I ran back in the store.
“Q. What did you do after you ran back in the store?
“A. I just sat down on a crate there for a second, a milk crate that was in there. I sat down on it and I got the phone in the floor and I just dialed the police station and told them what had happened.
“Q. Now, that individual that came in the store and held the pistol on you and took the money after you took it out of the cash register, is he seated in the courtroom?
“A. Yes, he is.
“Q. Would you point him out to the jury?
“A. Right there.
(Witness indicating the defendant.)
“Q. This is him, you pointing right by Mr. Bart Taylor, his attorney?
“A. Yes, sir.
MR. LOGGINS: Let the record reflect that she pointed to the defendant.
“Q. Now, do you recall how much money was taken from the cash register?
“A. A little over two hundred dollars, probably around two ten or so; two something.”
On cross-examination, the store clerk admitted that she did not know the exact amount of the money which was missing from the cash register, since the store continued to operate prior to the time that an accurate count of money was made. On direct examination, however, Mr. Terrell Presley, supervisor for Zippy Mart, testified that he “counted the money that was in the store and compared it to what it should have been and it was $210 short.”
At the conclusion of appellant’s outline of the facts in his brief, he states that “there is a complete void of any credible evidence as to the amount of proceeds or money taken from the Zippy Mart, and evidence of absolutely atrocious police work in formulating leads to a possible suspect.” This statement, however, ignores the testimony presented in this case, since the victim of the robbery positively identified the appellant as the person who robbed her at gunpoint. Additionally, such a statement ignores the status of the law of the State of Alabama with respect to the offense of robbery, as it applies to the facts in this case.
Under Alabama law, the offense of first degree robbery is defined in § 13A-8-41(a), Code of Alabama (1975), as follows:
“(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 and he:
“(1) is armed with a deadly weapon or dangerous instrument; or
“(2) causes serious physical injury to another.”
In the present case, the appellant argues that the failure to establish the exact amount of money which was missing from the cash register is conclusive proof that the State failed to present a prima facie case. Under Alabama law, however, this is not required.
As this court has noted, in order to prove the elements which will support a robbery conviction, there is no requirement, under Alabama law, that the State *23 prove that an actual “taking” of property occurred. Grace v. State, 431 So.2d 1331, 1333 (Ala.Crim.App.1982). In fact, not only is the value of the property immaterial, but an actual theft need not occur. Id. In the present case, the State proved that the appellant, “in the course of committing a theft,” was armed with a deadly weapon. Under the facts of this case, the fact that the victim testified that the appellant took money, regardless of the amount, from the victim at gunpoint established the necessary elements of the crime. Here, the testimony of the victim alone was sufficient to establish a prima facie case of robbery. Flowers v. State, 402 So.2d 1088, 1090 (Ala.Cr.App.) cert. denied 402 So.2d 1094 (Ala.1981). Thus, the trial court correctly concluded that defense counsel’s motion to dismiss and motion for new trial should be denied.
II
The second issue raised on appeal concerns the applicability of the Alabama Habitual Felony Offender Act to the facts of this case. At the sentencing hearing, the State proved that on August 23, 1974, appellant entered guilty pleas to three separate charges of second degree burglary. Appellant argued at the trial court level that the three convictions should be considered as one conviction for purposes of the act. This issue, however, has been decided against the appellant by virtue of the decision in the case of Watson v. State, 392 So.2d 1274 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1280 (Ala.1981). As this court in Watson, per Judge DeCarlo, noted:
“The statute seems clear and unambiguous that, where two or more convictions occur at the same time and in the same court, they are separate convictions within the meaning of the habitual offender statute. See People v. Braswell, 103 Cal.App. 399, 284 P. 709; Ex Parte Seymour, 31 Mass. 40 (14 Pick.); Commonwealth v. Phillips, 28 Mass. 28 (11 Pick.); § 13A-5-9, supra, contains no provision that, when an accused is convicted of eight felonies on the same day in the same court, with sentences to run concurrently, the convictions should be considered as one conviction. The purpose and intent of the legislature in enacting the Habitual Offender Statute were to prevent repetition and increase of crimes by imposing increased penalties upon repeat offenders. In the present case, a strict construction of § 13A-5-9, supra, allows, relevant to the issue, only one interpretation, that appellant’s eight convictions are to be considered as eight separate convictions and are not to be considered as one conviction.”
Although appellant states that he is “aware” of the Watson case, he argues that language in Burgess v. State, 412 So.2d 298 (Ala.Cr.App.1982), should be applied in this case.
In Burgess, this Court distinguished between the factual situation in Watson and the case where there has been no “previous conviction” of a felony on the day that multiple pleas of guilty to felony offenses are entered. In Burgess, this Court, per Judge DeCarlo, noted that the factual distinction could be expressed as follows:
“The difference between Watson, supra and the present case is that Watson committed a felony after his eight convictions, whereas appellant committed no offenses after any of his seven guilty pleas.”
Thus, the facts in this case fall squarely within the provisions of the Watson case, and the application of Burgess would not be appropriate to the facts in this case. For this reason, it is apparent that the trial court correctly concluded that the appellant had committed three prior felonies before he committed the present offense. Thus, the Alabama Habitual Felony Offender Act was properly applied.
For the reasons outlined above, it is apparent that neither of the arguments raised by appellant in this appeal has merit. Not only did the State present a prima facie case of robbery but, additionally, the trial court correctly applied the provisions of the Alabama Habitual Felony Offender Act at *24 the sentencing hearing. Thus, this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.