Robbery; fifty years.
Eyewitness accounts conclusively demonstrated that appellant was one of the two robbers who walked into Hardee's on Fourth Avenue North in Birmingham, Alabama on September 16, 1979, and who, at gunpoint, forced employees there to empty the safe and cash registers of approximately $1340.25. Eyewitness accounts further demonstrated that appellant was the robber who shot one of the customers in the back as the customer was trying to get out of appellant's way. *Page 1090 
Each element necessary to sustain a conviction for robbery was firmly established. Morris v. State, 97 Ala. 82, 12 So. 276
(1893); Robinson v. State, Ala.Cr.App., 337 So.2d 1382 (1976);Tarver v. State, 53 Ala. App. 661, 393 So.2d 161 (1974). The testimony of the victim, Ms. Scottie Hill, alone was sufficient to establish a prima facie case. Arnold v. State, Ala.Cr.App.,348 So.2d 1092, cert. den. 348 So.2d 1097 (Ala. 1977). Appellant did not present any evidence in his own behalf.
 I.
The first issue raised on this appeal concerns the identification of the appellant. The trial court entertained substantial voir dire testimony in addition to the testimony presented before the jury dealing with the identification process. The evidence presented at trial was substantially as follows:
Ms. Zanis Harris testified on voir dire that she saw the two men who robbed Hardee's. She made a positive in-court identification of appellant as one of the two men she saw. From her vantage point at the grill, Ms. Harris was able to see appellant's face for approximately two minutes while he struggled with a white customer behind the salad bar. Ms. Harris stated that nothing blocked her view of appellant's face while he was struggling with the customer, until the appellant's gun was fired.
Ms. Harris testified that Sgt. J.C. Woods of the Birmingham Police Department showed her seven or eight pictures of black males three or four weeks after the robbery. Ms. Harris stated that she identified appellant's picture on her second time through the pictures. No one was with her except Sgt. Woods. She stated that Sgt. Woods did not indicate or suggest that appellant was in the group of pictures she examined. Ms. Harris further stated that she picked appellant's accomplice out of a lineup, but that she did not pick appellant out of a lineup. She testified that when she saw appellant at Hardee's he had a full beard, moustache and bushy hair. He was wearing dark clothing and a toboggan. Ms. Harris estimated appellant's height at five feet, ten inches.
Mr. William Gary Snellings testified on voir dire that he was the customer appellant shot in the back in Hardee's on the date in question. He made a positive in-court identification of appellant as his assailant. He stated that he got a good look at appellant's face during the few seconds of the encounter. Mr. Snellings verified that appellant was wearing dark clothes and a toboggan, and had a beard and moustache.
Snellings also testified that Sgt. Woods showed him pictures on two occasions and that he did not pick out a picture of appellant on either occasion. He did state that he "picked out one" the second time but that he "wasn't sure about it." Mr. Snellings further stated that he viewed two line-ups consisting of black males and that he could not positively identify appellant on those occasions. Mr. Snellings testified that when he saw appellant being led into the courtroom he was absolutely positive appellant was the man who shot him.
Ms. Scottie Hill testified on voir dire that she was the manager on duty at Hardee's on the afternoon it was robbed. She made a positive in-court identification of appellant as one of the two men she saw approaching the side entrance of the store from the parking lot. She stated appellant was wearing navy blue pants and a blue floral shirt. Both appellant and his accomplice had on similar hats and were wearing wigs. Ms. Hill stated that appellant was "five nine to five ten" in height. Ms. Hill testified that she got a good look at appellant's face for approximately ten seconds and that she told one of the workers "to get a good description of these two guys."
Ms. Hill saw appellant's accomplice place an order and then jump across the counter, point his pistol and say, "Don't move." Appellant's companion forced Ms. Hill to open the safe. She heard two shots fired during this time and heard appellant say to "hurry up." Appellant's partner also got the money out of the registers and went out the back door. *Page 1091 
After the robbery, Ms. Hill was shown photographs of black males on two occasions and viewed three lineups of black males. Ms. Hill selected appellant's partner as one of the robbers at the third lineup she viewed, and selected appellant as the other robber the second time she was shown photographs. Ms. Hill stated that she was not influenced in her selection by Sgt. Woods or any other person.
At the conclusion of these three witnesses' voir dire testimony, defense counsel moved to suppress any identification of appellant by Mr. Snellings on the ground his testimony was tainted. The trial court decided to hear the testimony of Sgt. J.C. Woods before ruling on this motion. The jury was returned to the courtroom and Ms. Scottie Hill was called as the State's first witness.
Ms. Hill's testimony before the jury was substantially the same as her voir dire testimony.
Sgt. J.C. Woods next testified on voir dire that he showed seven photographs individually to Ms. Zanis Harris, Ms. Gracie Sayles, Ms. Scottie Hill and Mr. Snellings at the Birmingham City Jail on November 28, 1979. Sgt. Woods stated that three women each identified the photograph of appellant as one of the robbers, but that Mr. Snellings did not select a photograph.
Sgt. Woods conducted a lineup on November 30, 1979, which included appellant. Sgt. Woods stated that Ms. Hill identified appellant at the November 30th lineup.
Following Sgt. Woods' voir dire, the trial court ruled that Mr. Snellings' identification of appellant was to be suppressed from jury consideration.
Ms. Gracie Sayles testified on voir dire that she was a cashier at Hardee's when appellant and his confederate committed the robbery. Ms. Sayles made a positive in-court identification of appellant as one of the two robbers. Ms. Sayles testified in detail about appellant's physical appearance on that day. Her testimony was similar to the other eyewitness accounts. Ms. Sayles' testimony demonstrated that she had ample opportunity to observe appellant's face during the robbery. She testified that all the lights were on in Hardee's during the robbery and that "they were working fine." She stated that she identified appellant's picture from photographs Sgt. Woods had shown her.
The testimony of Ms. Zanis Harris and Ms. Gracie Sayles before the jury was substantially the same as their voir testimony concerning their identification of appellant.
Sgt. J.C. Woods testified before the jury that Ms. Hill viewed three physical lineups, that appellant was present in the third lineup only, and that Ms. Hill picked him out of the lineup at that time. Sgt. Woods further stated that Ms. Hill was shown photographs on two occasions, that appellant's photograph was included on the second occasion only, and that Ms. Hill selected appellant's photograph at that time.
Sgt. Woods testified that Ms. Sayles attended two physical lineups, that appellant was not present in either lineup, and that Ms. Sayles did not pick out a subject on either occasion.
Sgt. Woods next testified that Ms. Harris attended one physical lineup and selected appellant's confederate as one of the robbers on that occasion.
On review of all the testimony dealing with the identification of appellant, we are impressed with the degree of caution exercised by the learned trial judge in avoiding any possible error. The pre-indictment lineups and photographic arrays were neither unnecessarily suggestive nor conducive to irreparably mistaken identification. Each witness who identified appellant, either from the photographic array, the physical lineup, or both, testified that he or she was in no way influenced in making the selections. The confrontation procedures simply were not suggestive. See Williamson v. State, Ala.Cr.App., 384 So.2d 1224.
From the uncontroverted testimony of the witnesses, it is apparent that every precaution was taken to insure that their identifications would not be tainted. No witness was exposed to a one-man showup, *Page 1092 Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401
(1972); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967,18 L.Ed.2d 1199 (1967), or to a one-photograph display, Manson v.Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
Even had the confrontation procedures been suggestive, which we hold they were not, reliability remains the linchpin in determining the admissibility of identification testimony.Manson v. Brathwaite, supra. The United States Supreme Court has set out the following five factors to be considered in determining reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Manson v. Brathwaite, 432 U.S. at 114,97 S.Ct. at 2253; Neil v. Biggers, 409 U.S. at 199-200, 93 S.Ct. at 382. Applying these five criteria to the case before us, we conclude that the identification testimony presented to the jury was proper.
 II
Appellant maintains that the trial court erred in admitting the photographic array which Sgt. Woods presented to the three female witnesses who identified appellant. The seven color photographs depicted appellant and the other subjects in the standard frontal and profile views. Appellant objected to the introduction of the photographs on the ground that they were "highly suggestive."
Appellant relies on Holsclaw v. State, Ala.Cr.App.,364 So.2d 378, cert. den. 364 So.2d 382 (Ala. 1978) for authority that the photographic array should not have been admitted. InHolsclaw this court adopted the three-prong test, originally set out in United States v. Harrington, 490 F.2d 487 (2d Cir. 1973), for determining whether "mug shot" photographs should be admitted. We ruled that these types of photographs should not be admitted unless:
 "1. The Government must have a demonstrable need to introduce the photographs; and
 "2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and
 "3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implication of the photographs." Holsclaw, supra at 380.
Because the facts in Holsclaw are distinguishable from the present facts we find appellant's reliance on that case misplaced.
In Holsclaw the appellant's photograph depicted a placard hanging from the appellant's neck and bearing the following words and numbers:
 "Police Department Huntsville, Alabama 1-13-75 056557."
This court found that the prosecution failed each prong of theHarrington test in introducing the photographs. Holsclaw, supra at 381. In addition, the appellant in Holsclaw did not place his identity in issue.
The facts in the case at bar, however, are different. Appellant's identity and the identification procedures employed remained in issue during the entire trial. Although appellant did not take the stand, as in Williamson v. State, supra, a major portion of his attack on cross-examination of the State witnesses centered on the question of his identity. Questions concerning not only the photographic array, but also the physical lineup procedures, were numerous. Clearly, appellant's identity was centrally in issue despite the in-court identifications by three female witnesses.
Next, prior to the admission of the photographs, the Birmingham Police Department words and numbers on each photograph were completely covered with white stickers at the instruction of the trial court. See United States v. Rixner,548 F.2d 1224 (5th Cir.), cert. den. 431 U.S. 932,97 S.Ct. 2639, 53 L.Ed.2d 248 (1977); United States v. *Page 1093 Davis, 487 F.2d 112 (5th Cir. 1973), cert. den. 415 U.S. 981,94 S.Ct. 1573, 39 L.Ed.2d 878 (1974).
Moreover, before the photographs were admitted, Ms. Hill, Ms. Harris and Ms. Sayles each testified before the jury, without objection, that they looked at the photographs at the Birmingham City Jail when they identified appellant as one of the robbers. Further, these three witnesses, again in front of the jury, went through the process of selecting appellant's photograph from the seven photographs they had been shown by Sgt. Woods at the jail. There was no objection to this procedure.
Thus, in applying the three-prong test of Harrington to the present facts, we find that the State had a demonstrable need to introduce the photographs. Williamson, supra. Second, because the photographs had been "doctored" so that the prejudicial words and numbers were not visible to the jury, it cannot be said that the photographs themselves implied appellant had a prior criminal record. Third, since so much testimony concerning the place and purpose of showing the photographs came in without objection prior to their introduction, it cannot fairly be said that their actual introduction was done in such a manner as to draw particular attention to the source or implications of the photographs.
Finally, based on the strength of the State's evidence in this case, particularly the in-court identifications by the three female eyewitnesses, if the admission of the photographic array constituted error, it was harmless error at most. Rixner, supra, at 1226; Rule 45, ARAP.
 III
The appellant complains that his constitutional rights were violated when the State used its peremptory strikes to exclude blacks from the jury. This question was definitely answered inSwain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759
(1965); Thigpen v. State, 49 Ala. App. 233, 270 So.2d 666
(1972); Carpenter v. State, 404 So.2d 89 (Ala.Cr.App. 1980).
 IV
During the testimony of Ms. Zanis Harris, the trial court found it necessary to bring the courtroom to order due to various disturbances. From the record, we quote:
 "THE COURT: I'm sick and tired, I watched it all yesterday afternoon. I watched the witnesses. I've already called on one of the attorneys (the Assistant District Attorney) for giggling. I'm not going to allow people sitting back there as spectators to nod, disagree, smile, and indicate their disgust or their affirmation, whichever it be. When I hear it again they are going out in the hall."
There was no objection to this admonition, nor would the admonition have been error if objection had been made. The comment did not reflect adversely on either party. The trial judge is more than a mere moderator, Sprinkle v. State, Ala.Cr.App., 368 So.2d 554 (1978), cert. quashed, 368 So.2d 565
(Ala. 1979), and it is his duty to maintain order and decorum in a trial. Lockett v. State, 50 Ala. App. 58, 276 So.2d 643
(1973).
 V
Appellant insists that the indictment was defective in that it named the victim as "Scottie Hill," but stated that the property was taken "from his person and against his will, by violence to his person or by putting him in such fear." The only objection to the indictment came after the jury was struck, by appellant's oral motion to quash the indictment. Appellant had pleaded not guilty at arraignment three months earlier.
As this court held in Edwards v. State, Ala.Cr.App.,379 So.2d 336 (1979), cert. den., 379 So.2d 339 (Ala. 1980).
 "Generally, a demurrer is the proper procedure to raise defects in an indictment. Andrews v. State, 344 So.2d 533 (Ala.Cr.App.), cert. denied, 344 So.2d 538
(Ala. 1977).
 "Since a plea to the merits admits the validity of an indictment, a demurrer *Page 1094 
filed after arraignment and after a plea of not guilty is properly stricken. Underwood v. State, 248 Ala. 308, 27 So.2d 492 (1946). The right to file a demurrer is waived unless the demurrer is filed before a plea to the merits. Holloway v. State, 37 Ala. App. 96, 64 So.2d 115 (1953). If an indictment is merely voidable and subject to demurrer, the failure to demur will prevent appellate review of the indictment's shortcomings. Williams v. State, 333 So.2d 610 (Ala.Cr.App.), affirmed, 333 So.2d 613
(Ala. 1976)."
Thus, there is nothing before us to review on this point.
 VI
During the examination of Ms. Scottie Hill the following question and answer are recorded:
 "Q. Let me ask you, the other individual you picked out, was that the same man that came out there with Flowers and robbed you at Hardee's on the 16th?
"A. No. That was from another robbery."
We note that appellant's objection came after the answer, and thus was properly overruled as untimely. Woodard v. State,253 Ala. 259, 44 So.2d 241 (1950); Kendricks v. State, Ala.Cr.App.,378 So.2d 1203 (1979). There was no motion to exclude Ms. Hill's answer. Therefore, nothing is preserved for our review.
We have searched the record for error and have found none; therefore, the judgment and conviction by the Jefferson Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.