This appeal follows a conviction for the offense of sodomy in the first degree, in violation of § 13A-6-63, Code of Alabama
(1975), and sentence of life imprisonment. For the reasons outlined below, we affirm.
The sixteen-year-old victim testified that on April 13, 1984, she was on her way to classes at Selma High School, where she was a sophomore. The victim stated that she was walking through a playground on the way to school when a black male (whom she identified in open court as the defendant), called out to her. The victim testified that she had seen the defendant near the playground on a previous occasion. According to the victim, the defendant told her to "come here and get some money." The victim stated that the defendant was carrying a green "bank bag" and that there appeared to be two stacks of money inside the bag. The victim explained that she ignored the defendant and continued on her way to school but that the defendant started to walk toward her.
The victim testified that when she began to run away from the defendant, he pursued her and threatened to "shoot her" if she did not stop. The victim stated that she turned to look behind her and saw the defendant was running with a gun in his hand. According to the victim, the defendant caught up with her and a struggle ensued. The victim testified that the defendant grabbed her around the neck and put his hand over her mouth. The victim explained that she tried to scream for help as the defendant began to drag her out of the street and toward a nearby house. The victim stated that the defendant forced her up the steps of a nearby house while she continued to fight and call for help. According to the victim's testimony, the defendant threw her down on the porch and held her down while he forced his penis into her mouth.
According to the victim's testimony, her cries for help were heard and attracted the attention of two "little old ladies" next door. The victim stated that she heard some women's voices which indicated that they were going to investigate and find out what all the noise was about. According to the victim, when the defendant realized that the women next door had heard the struggle, he "got up, zipped his clothes up and left." The victim testified that she ran to her aunt's house, where the police were summoned to investigate the assault.
The defendant presented an "alibi" defense at trial. According to the testimony of the defendant's brother, Joe Lewis, the defendant was at "Cuz's Corner" from 6:30 until 8:00 o'clock on the morning in question. On cross-examination, Joe Lewis testified that he and the defendant drank "a couple" of "Colt 45" beers on the morning in question. The defendant's fiancee, Emma Lee, also testified and stated that, on the morning of the assault, she saw the defendant at Donnie's Cafe around 8:00 o'clock. According to Ms. Lee, there was no one else with the defendant at the time.
 I
The first issue raised on appeal concerns the propriety of a question asked of the victim by the State's attorney. During the direct examination of the victim, the State's Attorney questioned her about her identification of the appellant as the person who had committed the offense. The victim testified that she was able to positively identify the appellant as her assailant, without "any problem," because, according to the victim, "I ain't never going to forget that person." At this point, the following occurred:
 "[State's attorney]: Is this the man right over here in the yellow shirt that did this to you on this occasion?
"[The victim]: Yes.
 "[Defense attorney]: Objection, your honor, the district attorney is pointing to the defendant.
"THE COURT: Overruled." *Page 1365 
According to the appellant, the trial court improperly allowed the prosecution to "lead its own witness." This specific objection, however, was not raised at trial.
As a general rule, "the appellant is bound by the objection raised at trial." Reynolds v. State, 484 So.2d 1171 (Ala.Cr.App. 1985). An objection must also be made with "sufficient particularity" so that the trial court can make an informed decision. McDonald v. State, 448 So.2d 460, 463 (Ala.Cr.App. 1984).[1] "It is well settled that all grounds of objection not specified are waived, and that the trial court will not be placed in error on grounds not raised at trial." Reeves v. State,456 So.2d 1156, 1160 (Ala.Cr.App. 1984); Lacy v. State,484 So.2d 1192 (Ala.Cr.App. 1986); Saffold v. State, 485 So.2d 806
(Ala.Cr.App. 1986).
Even assuming, arguendo, that the proper objection was made at trial, appellant's argument lacks merit because the question had been answered before defense counsel objected, and counsel did not move to exclude the objectionable testimony. "[W]here a question is answered before an objection is made, the objection comes too late and the court's ruling will not be declared in error without a motion to exclude and an adverse ruling." Thomasv. State, 440 So.2d 1216, 1218 (Ala.Cr.App. 1983) (citation omitted). See also: Trawick v. State, 431 So.2d 574, 577
(Ala.Cr.App. 1983); Hunt v. State, 453 So.2d 1083, 1086
(Ala.Cr.App. 1984).
Additionally, appellant's argument lacks merit because the victim had previously given essentially the same testimony on direct examination, without objection by defense counsel. Without objection, the victim had previously identified the appellant as the person who was "standing there on the playground" on the morning in question and had referred to the appellant as the "man over here in the yellow shirt" when identifying her assailant.[2]
Because the same testimony had previously been admitted into evidence without objection by defense counsel, there was no prejudice to the appellant as a result of the subsequent testimony. "[T]he admission of evidence which is mostly cumulative of an admitted fact is error without injury to the accused." Hayes v. State, 395 So.2d 127, 147 (Ala.Cr.App. 1980),cert. denied, 395 So.2d 150 (Ala. 1981).
 II
The second issue concerns a police department photographic array which was used by the victim in her initial identification of the appellant.[3] During the presentation *Page 1366 
of the State's case-in-chief, defense counsel attacked the validity and accuracy of the victim's identification of the appellant based upon the police photographs which were shown to the victim. After the State's attorney presented testimony concerning the identification procedure used at police headquarters, the photos were admitted into evidence, over defense counsel's objection.[4] The appellant argues that the admission of the photographs was improper because they implied that he had a prior criminal record.
According to the appellant, the introduction of the photos (which he characterizes as "mug shots") into evidence improperly allowed the jury to infer that the appellant had a prior criminal record. This specific objection, however, was not made at trial. At trial, defense counsel merely objected to the introduction of the exhibit into evidence because the photographs were "police photographs" and therefore "prejudicial."[5] The general objection that the exhibit was "prejudicial" would not preserve for review the specific objection that the State was improperly attempting to introduce evidence of the accused's prior criminal record.Reeves v. State, 456 So.2d 1156, 1161 (Ala.Cr.App. 1984). As this court in Reeves stated:
 "Here there was no objection that the State was attempting to introduce evidence of a prior crime as is alleged by appellant. As a result, the appellant has failed to preserve this issue for review. Further, the objection was of a general nature, and as such, not sufficient to preserve an issue for review." Id. at 1161. (Citations omitted.)
See also: Bland v. State, 395 So.2d 164, 167 (Ala.Cr.App. 1981) (appellate argument that the prosecution was improperly introducing evidence of separate and unrelated criminal offenses committed by the accused was not preserved where, at the trial level, counsel objected to the evidence as "prejudicial" or "immaterial"); Dorsey v. State, 406 So.2d 457 (Ala.Cr.App. 1981) (appellant waived argument that photographs were impermissible "mug shots" where, at trial, objection was made on the basis of "inadmissible hearsay").
Even assuming, arguendo, that proper objection to the photographic array was made at the trial level, it is not apparent that the photographs allowed the jury to "infer that the appellant had a prior criminal record." The mere use of police photographs as evidence in a criminal case is not per se
prejudicial to the rights of the accused.[6] In the case subjudice, the photographs *Page 1367 
depicted seven black males who were similar in physical appearance and age. The only reference to the appellant's possible "criminal record" were the words "police department" underneath the pictures. There was no listing of prior offenses, arrests, or any other prejudicial data. As a practical matter, if any of the information on the photographs had been objectionable, defense counsel should have specifically objected at trial. If such a specific objection had been made, the alleged error could have been "`easily corrected at the time of the admission of the evidence by curing the extraneous information on the exhibits."United States v. Richardson, 562 F.2d 476, 478 (7th Cir. 1977),cert. denied, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776
(1978), quoted in Johnson v. State, [Ms. 6 Div. 942, August 20, 1985] (Ala.Cr.App. 1985).
Prior to the introduction of the exhibits into evidence, testimony was elicited, without objection, which established that the victim had examined certain photographs at the police station in order to identify her assailant. In fact, the issue was initially brought out by defense counsel when he raised the issue of "mistaken identity" in his cross-examination of the victim. Because defense counsel opened the door to the testimony concerning the identification of the assailant by way of the photographic array, it was proper for the trial court to admit the photographic display into evidence "to rebut the inference that the appellant was not the assailant." Richburg v. State,439 So.2d 788, 790 (Ala.Cr.App. 1983).[7]
In an often-cited analysis, the Second Circuit Court of Appeals in United States v. Harrington, 490 F.2d 487 (2d Cir. 1973), established a "three-prong" test to determine whether the introduction of police photographs into evidence in criminal cases results in error prejudicial to the accused. The Harrington
approach was adopted by this court in Holsclaw v. State,364 So.2d 378 (Ala.Cr.App.), cert. denied, 364 So.2d 382 (Ala. 1978). Applying the three-prong test of Holsclaw, supra, to the present case, the admission of the photographs into evidence was not reversible error because: (1) the identification of the appellant as the assailant was a "contested issue of fact" in the case and thus there was a "demonstrable need" for the State to introduce the photographs into evidence; (2) the photographs did not imply that the appellant had a prior criminal record; and (3) the manner of introduction of the exhibit into evidence at trial did not "`draw particular attention to the source or implication of the photographs.'" Jones v. State, 451 So.2d 389, 393
(Ala.Cr.App. 1984). Additionally, in the instant case, the following would apply:
 "[First], we find that the State had a demonstrable need to introduce the photographs. [Citation omitted.] Second, because the photographs had been `doctored' so that the prejudicial words and numbers were not visible to the jury, it cannot be said that the photographs themselves implied appellant had a prior *Page 1368 
criminal record. Third, since so much testimony concerning the place and purpose of showing the photographs came in without objection prior to their introduction, it cannot fairly be said that their actual introduction was done in such a manner as to draw particular attention to the source or implications of the photographs." Flowers v. State, 402 So.2d 1088, 1093 (Ala.Cr.App.), cert. denied, 402 So.2d 1094 (Ala. 1981).
In the case sub judice, as in Flowers, the strength of the victim's identification of the appellant as her assailant allows us to conclude that even if the admission of the photographic array constituted error, "it was harmless error at most." Id., at 1093, citing United States v. Rixner, 548 F.2d 1224, 1226 (5th Cir.), cert. denied, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248
(1977).[8]
AFFIRMED.
All the Judges concur.
[1] In McDonald v. State, 448 So.2d 460, 463 (Ala.Cr.App. 1984), defense counsel argued at the trial level that the testimony objected to "does not go to the truth of any matter asserted." On appeal, however, the grounds for the objection was that the testimony was not admissible to "rebut proof of the witness's crimes" or to "rebut the witness's prior inconsistent statements." After noting that "only those grounds for objection presented to the trial court can serve as a basis for reversal of the court's action," this court reasoned, "Furthermore, appellant is bound by the grounds of objection specified at trial even though the evidence may have been inadmissible on different grounds." 448 So.2d at 462-63.
[2] Also, without objection by defense counsel, the State's attorney had previously referred to the victim's assailant as "the defendant here in the yellow shirt" when posing additional questions to the young victim.
[3] It is significant to note that the photographic array was initially marked and presented to the court by the defense. (See footnote no. 8, post). After the jury had been struck, but prior to the trial of the case, defense counsel moved to suppress the victim's "out-of-court and in-court" identification of the appellant. Out of the presence of the jury, defense counsel argued that the identification procedure was "tainted," and, for this reason, that the victim's identification testimony should be suppressed. Defense counsel marked as "Defendant's Exhibit 1" the police photographs and argued that "the lighting, the focus in general would be more slanted for an individual to focus on the photograph of the [appellant]." In denying the motion to suppress, the trial court stated as follows:
 "I have reviewed the seven photographs marked Defendant's Exhibit 1 and they all appear to be fairly similar in appearance, all approximately the same age. I don't see anything unusual or outstanding that would identify any one of the individuals in the photographs."
After taking exception to the trial court's ruling, defense counsel requested that the "photographs be attached for inclusion in the record for purposes of this motion." The defense exhibit was subsequently offered into evidence by the State, over objection of defense counsel.
[4] By the time the motion to admit the defense exhibit into evidence was made by the State, the victim had already testified, without objection, about the use of the photographs at the police station to aid her in the identification of the appellant as her assailant. Additionally, the police officer who questioned the victim at police headquarters also testified, without objection, about the identification procedure. The State had also established a proper predicate, or foundation, for the introduction of the exhibit into evidence.
[5] Additional objections which the appellant now raises (arguing that there was improper corroboration and "order of proof"), were also not presented at the trial level and thus have been waived for purposes of appellate review. "Because the specific ground raised at trial waived all other grounds, the issue raised on appeal was not properly preserved for our review." Williams v.State, 453 So.2d 367, 370 (Ala.Cr.App. 1984).
[6] In a case which considered the possible prejudicial effect of the introduction into evidence of a defendant's fingerprint card, this court, per Judge Bowen, noted that "The mere existence of recorded fingerprints does not per se imply the existence of a criminal record." Woodson v. State, 405 So.2d 967, 968
(Ala.Cr.App.), cert. denied, 405 So.2d 969 (Ala. 1981), quotingBrown v. State, 369 So.2d 881, 884 (Ala.Cr.App. 1979). In concluding that there was no error in the admission of the defendant's fingerprint card in Woodson, this court reasoned as follows:
 "The date (even if it is before the offense involved in the trial) and the place of taking (the police department) need not be eliminated from the fingerprint record before the card is introduced into evidence. Parrish v. State, 366 So.2d 530
(Fla. 1979).
 "Each case of alleged error in the admission of a fingerprint record taken pursuant to another criminal offense and prior to the charge for which the accused is presently on trial must be judged on its own merits. After carefully scrutinizing the fingerprint card in this case we do not find it as objectionable as the card introduced in Brown, supra. The card itself does not imply the existence of a past criminal record apart from the very fact that it is a fingerprint card taken at the Opelika Police Department." Id., 405 So.2d at 969.
In the present case, the mere existence of the appellant's picture among those in the array does not per se imply that the appellant had a prior criminal record. Additionally, here, as inWoodson, there was no attempt on the part of the prosecution to imply that the appellant had a prior criminal record.
[7] Defense counsel opened the door to the discussion of the identification procedure which was used at the initial stage when he questioned the victim concerning the assistance or support which she had received in making the identification. The doctrine of invited error would apply to instances where defense counsel does everything he can to "invite the error," but then makes no request for curative instructions after an objection has been overruled or a motion denied. Gary v. State, 473 So.2d 604, 606
(Ala.Cr.App. 1985). See also: Dixon v. State, 481 So.2d 434
(Ala.Cr.App. 1985).
[8] A significant factor in the present case is the fact that the evidence which is offensive to the appellant consists of adefense exhibit, prepared for use at trial by defense counsel. Because it was a defense exhibit, it can be assumed that defense counsel was aware of any prejudicial information contained in the exhibit. Due to the failure of defense counsel to either specifically object to the fact that the exhibit implied that the appellant had a prior criminal record or move to cure the objectionable portions of the exhibit, the error, if any, is waived. To hold otherwise would be to reverse the conviction on what is clearly an example of "invited error." As this court, per Judge Taylor, stated in Johnson v. State, [Ms. 6 Div. 942, August 20, 1985] (Ala.Cr.App. 1985):
 "`An accused cannot by his own voluntary conduct invite error and then seek to profit thereby. It would be a sad commentary upon the vitality of the judicial process if an accused could render it impotent by his own choice.'" Aldridge v. State, 278 Ala. 470, 179 So.2d 51, 54 (1965). See also Spears v. State, 428 So.2d 174 (Ala.Cr.App. 1982); McDaniel v. State, 418 So.2d 832 (Ala.Cr.App.), cert. denied, 418 So.2d 934 (Ala. 1982); Sullivan v. State, 394 So.2d 76
(Ala.Cr.App. 1981)."