[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 18 
The appellant was indicted for the offense of capital murder and was subsequently convicted of the lesser included offense of intentional murder. Following a pre-sentencing investigation, the appellant was sentenced to life imprisonment. *Page 19 
 I
The appellant argues that the trial court erred in denying his motion challenging the grand and petit juries on the ground that the method of jury selection in Dallas County substantially failed to comply with the laws and Constitution of Alabama and the Constitution of the United States. Specifically, the appellant contended that the method of jury selection used in Dallas County failed to ensure that juries represented a fair cross-section of the community and that all citizens had the opportunity to be considered for jury service. He further alleged that the method of jury selection in the county systematically excluded citizens on account of race, sex, economic status, age, income, occupation, and education. The appellant's motion, contained in the record, indicates that he requested a hearing as to this matter; however, the order reflects his motion was denied and that no hearing was held. The appellant stated that his purpose in making the motion was to preserve
 "all right to challenge the jury selection procedure and the resulting composition of both the grand and petit juries in light of the fact that counsel for the defendant has not had time or funds to analyze the records necessary to determine the feasibility of such challenge. Only a thorough examination of the jury selection process will show whether and to what extent substantial violations of the law and constitutions have occurred."
On appeal, the State submits that the appellant did not meet his burden of proof in raising this issue. The appellant argues that he met his burden because he raised the issue, and because, eight months after his trial, the trial court held in an unrelated case that the method for selecting grand and petit juries in Dallas County violated § 12-16-60, Code of Alabama
1975. The appellant attached the order in this case to his brief. However, attachments to briefs are not considered part of the record and therefore cannot be considered on appeal.Acres v. State, 548 So.2d 459 (Ala.Cr.App. 1987).
The State argues that the appellant failed to establish a prima facie case of the violation of the constitutional requirement that both grand and petit juries be drawn from a panel of prospective jurors that represents a fair cross-section of the community. Rutledge v. State,482 So.2d 1250, 1253-54 (Ala.Cr.App. 1983), reversed on other grounds,482 So.2d 1262 (Ala. 1984). See also Sanders v. State,426 So.2d 497, 502-03 (Ala.Cr.App. 1982).
 " 'The discriminatory application of racially neutral statutes can be attacked in three ways. The first entails a demonstration of discriminatory outcome of the selection procedure. Pursuant to this method the challenger has the burden of establishing a prima facie case by producing evidence which proves that there is a substantial disparity over time between the percentage of the cognizable community group on the jury roll or venire and that group's percentage in the relevant population. Once a prima facie case has been proven, the burden shifts to the State to justify the discrepancy. The second method involves a showing that discriminatory selection procedures have been indulged in by the selectors. Thus, evidence proving that the selectors have failed to take affirmative steps to comply with the two-fold constitutional duty imposed upon them and described above will allow the challenger to succeed. The actual outcome of the selection process is wholly inconsequential to the success or failure of this method. The third and final requires the demonstration of a combination of factors indicative of discrimination and may involve proof called for by the first and second methods in addition to other evidence.'
 "Sperlich Jaspovice, Grand Juries Grand, Jurors and the Constitution, 1 Hastings Const.L.Q. 63, 80-81 (1974).
 "See also: Kuhn, [Jury Discrimination; The Next Phase, 41 S.Calif.L.Rev. 235 (1967)]; Comment, The Civil Petitioner's Right to Representative Grand Juries and Statistical Method of Showing Discrimination in Jury Selection Cases Generally, 20 U.C.L.A. Law Rev. 581 (1973); Comment, *Page 20 Jury Discrimination in the South: A Remedy? A Colum.J.L. Soc.Prob. 589 (1972); Discriminatory Jury Selection, 9 Am.Jur. Proof of Facts 2d 407 (1976).
 "Though the discrimination must be 'purposeful' or 'systematic,' proof of specific acts of discrimination or actual discriminatory intent on the part of the jury commissioners is not required. Purposeful discrimination may be inferred or presumed to have arisen from the fact of a continued lack of representation or from underrepresentation or tokenism. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Patton v. Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (1945); Mitchell v. Johnson, 250 F. Supp. 117 (M.D.Ala. 1966). A statistical showing of significant numerical disparity in representation will give rise to a finding of purposefulness. Avery, supra; Patton, supra; State ex rel. Gregg v. Maples, 286 Ala. 274, 239 So.2d 198 (1970); Inter-Ocean Casualty Co. v. Banks, 32 Ala. App. 225, 23 So.2d 874 (1945)."
Smith v. State, 364 So.2d 1, 7-8 (Ala.Cr.App. 1978).
"Neither the jury roll nor the venire need be a perfect mirror of the community nor accurately reflect the proportionate strength of every identifiable group." Carter v.State, 53 Ala. App. 43, 297 So.2d 175, 180 (Ala.Cr.App. 1974). "The law in Alabama does not require, literally, that every qualified person's name be placed on the rolls or in the box.Mitchell v. Johnson, 250 F. Supp. 117 (M.D.Ala. 1966). Failure to include the names of every qualified person on the jury role is not a ground to quash an indictment or venire, absent fraud or purposeful discrimination." Lopez v. State, 415 So.2d 1204,1209 (Ala.Cr.App. 1982).
In the present case, while it is true that the appellant did not prove a case of purposeful discrimination, he requested that he be granted access to certain lists and that he be granted the opportunity to present sufficient evidence to meet his burden of proof; however, the trial court denied the appellant's request. In Nixon v. State, 51 Ala. App. 439,286 So.2d 314 (Ala.Cr.App. 1973), this Court held that, where a defendant filed a motion containing 20 grounds attacking the validity or legality of the jury venire, one of which alleged that the venire did not represent a cross-section of the county's citizens, the defendant had a lawful right to be heard on his motion to quash "and to submit evidence if available in support of the several grounds of the motion that challenged the validity and composition of the venire." This Court noted that the motion did not seek specific relief, but further noted that subsequently, after that case, the Alabama Supreme Court rendered a decision that the system employed by that county in selecting jurors did not meet the mandates of law. The Alabama Supreme Court reversed this Court's decision in Nixon v. State,291 Ala. 657, 286 So.2d 315 (1973). The Court held:
 "We think the Court of Criminal Appeals erred in reversing the trial court for at least these: (1) The defendant did not ask for any relief or an opportunity to be heard; (2) the order of the trial court denying the motion states that the motions 'came on to be heard'; and (3) the presumption is in favor of the regularity of the proceedings surrounding the selection of the jury venire, in the absence of proof to the contrary, or an offer of such proof.
 "The Court of Criminal Appeals admits that the defendant made no prayer for any specific relief in his motion to quash.
 "The motion to quash does not contain a request to be heard and present evidence. While the record does not show that a hearing was held, the record does not show that a hearing was not held. In fact, the order of the trial court denying the motion to quash states as follows:
 " 'This cause coming on to be heard on a Motion by the Defendant to quash the jury venire and continuance and hearing on same, submitted to me on *Page 21 
the 22nd day of October, 1970, and the Court having considered same, is of the opinion that the Motion is not well taken.' "
291 Ala. at 658, 286 So.2d at 316.
The Alabama Supreme Court further indicated that, although the Court of Criminal Appeals noted that jury selection process of the county was subsequently held to have been unconstitutional, the Alabama Supreme Court stated that, "[t]here is a presumption that no legal fraud exists in the system used for the selection of jurors, in the absence of proof to the contrary, or an offer of such proof."291 Ala. at 659, 286 So.2d at 317. The Court held: "[I]t is apparent that the defendant did not present any proof or offer to present proof of the allegations made in his motion to quash."Id. Although the appellant, in the instant case, did request a hearing, he made no specific allegations concerning an offer of proof. The appellant's motion contains only bare allegations and rules of law. Cf. LaFave and Israel, Criminal Procedure § 21.2(a) (1984) (which states, concerning federal jury selection procedures, that "[i]f the motion contains a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of the Act, the movant is entitled to submit supporting proof"). Similarly, if the appellant had presented facts which, if taken as true, would have supported his claims, then he would have been entitled to his hearing. However, his motion constitutes little more than a fishing expedition. See Robinson v. State, 560 So.2d 1130, 1132
(Ala.Cr.App. 1989) (the defendant moved to quash the jury panel on the grounds that it did not adequately represent a fair cross-section of the community; however, appellant's trial counsel admitted that he did not know if the current system tended to exclude black people more than white people).
 II
The appellant argues that the trial court erred in denying his motion to dismiss the indictment. Specifically, the appellant alleges that the failure to state with specificity in the indictment the means used to cause the victim's death made the indictment being defective. The indictment in the instant case states as follows:
 "The Grand Jury of said County charged that before the finding of this indictment, Darren Huff, whose name is otherwise unknown to the Grand Jury other than as stated, did intentionally cause the death of Minnie Hatcher by strangulation, and Darren Huff caused said death during the time that Darren Huff did unlawfully enter the lawfully occupied dwelling house of Minnie Hatcher with the intent to commit a theft or felony therein, to-wit: Theft, in violation of Section 13A-5-40(a)(4) of the Code of Alabama, Against the peace and dignity of the State of Alabama."
Thus, the indictment clearly states the means by which the appellant is alleged to have committed the murder, specifically "by strangulation."
 "The function of an indictment is to inform the accused of the crime of which he is charged, so that he may prepare defense. Washington v. State, 448 So.2d 404, 407 ([Ala.] 1984), on remand, 448 So.2d 409 (Ala.Cr.App. 1984). An indictment which follows the language of the statute is sufficient to apprise the accused of the charges against him, and to allow him to prepare a defense. Copeland v. State, 455 So.2d 951, 956 (Ala.Cr.App.), cert. denied, 455 So.2d 956 (Ala. 1984)."
Stout v. State, 547 So.2d 894, 899 (Ala.Cr.App. 1988), affirmed,547 So.2d 901 (Ala. 1989). See also State v. Franklin,541 So.2d 593 (Ala.Cr.App. 1989). In the present case, the indictment properly follows the language of the murder statute, § 13A-6-2, Code of Alabama 1975.
The appellant's argument appears to be that the indictment is faulty because it does not specify the instrument used to strangle the victim. However, an indictment need not specify the precise instrument used to cause the victim's death. Thompson v. State,542 So.2d 1286, 1290-91 (Ala.Cr.App. 1988), aff'd, 542 So.2d 1300 (Ala.), cert. denied, 493 U.S. 874, *Page 22 110 S.Ct. 208, 107 L.Ed.2d 161 (1989). See also Hewlett v. State,520 So.2d 200, 204 (Ala.Cr.App. 1987) ("Having been apprised of the crime he was charged with committing and the means by which he committed it, the appellant was not mislead, nor was his ability to defend himself hampered by the indictment's failure to set out the specific instruments by which he carried out the beating").
 III
The appellant argues that the trial court erred in denying his motion to strike the venire because, he argues, the term of court in which the appellant was tried was opened with a prayer, which the appellant alleges violated the "establishment of religion" clause of the First Amendment to the United States Constitution and the "establishment of religion clause" contained in Article 1, Section 3 of the Constitution of Alabama of 1901. The appellant cites no law or authority in his argument.
The record indicates that, after the jury was qualified by the trial court, defense counsel made the following motion:
 "First, Your Honor, let me — this is one that I have not filed, but let me preface this motion. At the beginning of court this morning, there was — the court was opened with a prayer and although . . . I do not have any personal problems with court session being opened with prayer, I believe that is a good custom and tradition to continue and my client also believes the same way. I feel I am compelled, however, to make a motion that based on recent rulings from the federal courts of the United States that prayer in a public setting constitutes a violation of separation of church and state clauses of the United States Constitution and, therefore, to have that prayer at the beginning of this session was invalid and is improperly — it has improperly tainted the proceedings on that basis, we would move that this venire is due to be dismissed."
Thus, the appellant has acknowledged that he did not have a problem with the prayer being read and he has failed to show any prejudice which would merit the quashing of the venire.
 "A challenge to the array or a motion to quash or strike the venire will not be sustained unless it is alleged and proved that the whole venire is tainted with prejudice. Nickerson v. State, 283 Ala. 387, 217 So.2d 536 (1969); Junior v. State, 47 Ala. App. 518, 257 So.2d 844, cert. denied, 288 Ala. 744, 257 So.2d 852, cert. denied, 407 U.S. 923, 92 S.Ct. 2473, 32 L.Ed.2d 810 (1971); Lane v. State, 40 Ala. App. 174, 109 So.2d 758 (1959); Burton v. State, 194 Ala. 2, 69 So. 913 (1915)."
Cole v. State, 352 So.2d 17, 19 (Ala.Cr.App.), cert. denied,352 So.2d 20 (Ala. 1977). See also Bowens v. State, 54 Ala. App. 491, 309 So.2d 844 (1974), writ denied, 293 Ala. 746,309 So.2d 850 (1975) (holding that the defendant failed to meet his burden of proof to establish the basis for his motion to quash the jury venire and panel, where no pertinent specifics were offered). Morris v. State, 39 So. 608 (Ala. 1905) (where the defendant failed to offer any evidence in support of his motion to quash a venire, the motion was properly denied). Moreover, we find no error in opening the court session with a prayer. See, e.g., Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330,77 L.Ed.2d 1019 (1983) (upholding the practice of opening sessions of Congress with prayer.)
 IV
The appellant argues that the trial court erred in denying his Batson motion. Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although the State argues on appeal that, the trial court failed to determine whether the appellant met his burden of proof in establishing a prima facie showing of discrimination, the record indicates that the appellant failed to meet this burden of proof. However, the record indicates that the trial court ordered the prosecutor, over the prosecutor's objection, to provide explanations for his strikes. Therefore, this court must also look at the reasons given by the prosecutor to determine whether these reasons are actually racially neutral. Avery v. State, 545 So.2d 123, 126
(Ala.Cr.App. 1988). *Page 23 
The record indicates that the State used 13 of its 20 peremptory challenges to remove blacks from the venire. Five black venire members served on the jury. On appeal, the appellant concedes that a number of prosecution's peremptory strikes were made on grounds that have been recognized as "race-neutral." However, he argues that two of the peremptory challenges made by the prosecutor were not made on such grounds. As to the first venire member, the prosecutor stated that he worked for J.B. Hain Company and that the defense attorneys were with the law firm of Hobbs and Hain, represented this company. As this explanation was based on the particular facts of this case, i.e. the particular defense counsel in this case, see Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987), this reason is validly race-neutral. The prosecutor struck the other venire member because he lived one block from the appellant in a neighborhood known as "Crack City" and "Gangster Heaven." "The location of the residence of a venire member may provide a proper justification for a peremptory strike. Avery [v. State,545 So.2d 123, 126 (Ala.Cr.App. 1988)] ('Lives next door to appellant'); Ex parte Lynn, 543 So.2d [709, 711 (Ala. 1988)] ('lived in the same neighborhood as the defendant's grandmother and aunt'; 'lived one street over from the co-defendant')."Warner v. State, 594 So.2d 664 (Ala.Cr.App. 1990).
 " 'In reviewing the trial court's finding that the strikes were nondiscriminatory, we can only reverse if we find that the determination was clearly erroneous.' Williams [v. State, 548 So.2d 501, 504 (Ala.Cr.App. 1988)]. Accord, Ex parte Branch, 526 So.2d at 624. ' "In a Batson context, the Supreme Court observed that because the trial judge's findings 'largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.' Batson, 476 U.S. at 98, n. 21 [106 S.Ct. at 1724, n. 21]." ' Owens v. State, 531 So.2d 22, 23 (Ala.Cr.App. 1988), quoting State v. Antwine, 743 S.W.2d 51, 66
(Mo. 1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). In reviewing the lower court's ruling, we have been mindful that it is not our function to decide this issue de novo, to 'duplicate the role of the lower court.' Owens, 531 So.2d at 24. The finding of the trial judge 'is entitled to considerable deference on appeal.' Harrell [v. State], 555 So.2d [263] at 268 [(Ala. 1989)]. See also Scales v. State, 539 So.2d 1074, 1075 (Ala. 1988). ('[W]e are convinced that the trial judges in our system are in a much better position than appellate to decide whether the true has been stated.')"
Warner v. State, supra, at 674.
We find no error in the trial court's determination that the prosecutor did not exercise his peremptory jury strikes in a racially discriminatory manner.
 V
The appellant argues that the trial court erred in denying his motion to suppress the identification testimony and evidence, alleging that the pretrial identification procedures were impermissibly suggestive. The appellant makes this claim concerning both a pretrial photographic array and a pretrial lineup.
The appellant alleges that the circumstances surrounding the photographic array resulted in its being unduly suggestive, because four of the eight photographs were of people known by Alphonso Reese, the man making the identification. Moreover, he argues that the procedure was unduly suggestive because the police stated that "maybe they would have some pictures he could identify." However, the appellant's motion to suppress identification testimony filed prior to trial concerned only the physical lineup. A hearing was held pursuant to this motion, following which the trial court specifically ruled that "the lineup was adequate." When the appellant was identified in court, no objection was made. Therefore, the issue as to the suggestiveness of the photographic array is not preserved.Lewis v. State, 488 So.2d 1362 (Ala.Cr.App. 1986). Although the appellant made mention, at the conclusion of *Page 24 
the hearing, of the facts surrounding the photographic lineup, he failed to object to testimony concerning that photographic array or to move to exclude evidence thereon. Even if his mention of the facts surrounding the photographic identification could be construed to constitute an objection, he failed to obtain an adverse ruling from the trial court as to that identification.
The appellant argues that the physical lineup was unduly suggestive because Alphonso Reese, the man making the identification, knew three of the six people in the lineup. Moreover, the appellant argues that the other members of the lineup were older than he, and that only one other man in the lineup had a mustache like his. Although Alphonso Reese stated during the hearing that he knew three members of the lineup, he further testified that he never told the police that he knew these men.
Although the appellant submits that he was the only member of the lineup with a mustache, the record includes a lineup chart used by the Selma Police Department with the physical descriptions of each of the members of the lineup. Nowhere does it indicate that only the appellant had a mustache, nor do we find such an indication anywhere in the record. Moreover, the chart indicates that the members of the lineup were all black males with similar characteristics. The appellant is 5'8" and two other members of the lineup were of the same height, one member was 5'11", one member 6'1", and one member 6'2". The appellant weighed 160 pounds, another member weighed 160 pounds, one weighed 150 pounds, one weighed 170, one weighed 172, and one weighed 230 pounds. The appellant was 18 years old at the time, another member was 20 years old, one 21 years old, one 26 years old, and one 29 years old. Thus, the record does not support the claim that there was a great disparity in the physical characteristics of the members of the lineup. "The fact that there was some discrepancy in physical appearance among participants in the lineup does not taint the identification procedure or render it suggestive as a matter of law. Lewis v. State, 399 So.2d 907 (Ala.Cr.App. 1981). Nor does the fact that the appellant is the tallest or shortest in the lineup make the lineup unduly suggestive." Hollingquest v.State, 552 So.2d 1078, 1080 (Ala.Cr.App. 1989).
Moreover, the basis for the identification was clearly reliable and accurate. "Reliability is the linchpin in determining the admissibility of identification testimony."Mullis v. State, 545 So.2d 205, 209 (Ala.Cr.App. 1989). The witness testified that, when he made his identification at the lineup, he was certain that the appellant was the man he had seen previously. He testified that, on the afternoon of the offense, he walked by the victim's house and observed a black male with straggly hair, beard, and mustache under the carport, and the man was wearing a brown shirt and pants. He testified that he observed the man trying to get into the driver's side of the victim's vehicle and that he spoke to the person and then passed by. The witness testified that he had seen him several days prior to the day of the offense. Based on the witness's opportunity to view the criminal at the time of the crime, his degree of attention, his accuracy of description, and his level of certainty demonstrated at the time of identification, we find that the identification testimony was sufficiently reliable. James v. State, 549 So.2d 562
(Ala.Cr.App. 1989). Although it appears from the record that the witness's first identification of the appellant did not occur until three or four weeks after the offense, this factor does not weigh against his identification, especially in view of the fact that he was shown some mugshots previously but did not identify him as he was not in any of the mug books.
 VI
The appellant alleges that his constitutional right to confront a witness was denied when an officer was allowed to testify concerning statements made by a witness who invoked hisFifth Amendment privilege not to testify. The record indicates that, at the time of trial, the appellant's accomplice, Jesse McDole, had already been convicted, but had not yet been *Page 25 
sentenced. When the State called Jessie McDole to testify at this trial, McDole's attorney approached the bench and stated that he chose not to testify, on the grounds that he might incriminate himself. McDole's attorney testified that he was refusing to testify on his attorney's advice because, "[w]e [McDole and his attorney] feel like we have a meritorious appeal and at the proper time we will give notice of appeal." The prosecutor argued that, because McDole had already been convicted, his Fifth Amendment rights were no longer protected. The appellant's counsel argued that he had a right to cross-examine McDole concerning matters not pertaining to McDole's guilt or innocence, but rather pertaining to the guilt or innocence of the appellant. He argued that McDole did not have a blanket right to Fifth Amendment protection unless questions were asked that would call for evidence that would particularly incriminate him. The court stated that the prosecution had a right to call the witness to the stand and, following a recess, the State requested the opportunity for an examination of the prospective witness outside of the presence of the jury. McDole's attorney argued that, if the trial court tried to force McDole to testify, he would immediately give notice of appeal to the Court of Criminal Appeals and indicated that McDole's testimony might have profound impact toward reversing his conviction. The trial court responded that, because McDole had already been convicted and the sentence was mandatory, his privilege did not apply in the present case. The appellant's attorney then stated:
 "At this stage, since the Court has overruled the objection of [McDole's attorney] it's the position of the defendant, Darren Huff, that we would like to enter an objection that any testimony that the District Attorney may try to elicit, or even calling Mr. McDole to the stand, would be highly prejudicial to our client because it has been stated on the record here by Mr. McDole's attorney that he will not testify and will not give any evidence in this case."
Thereafter, outside the presence of the jury, Jessie McDole was sworn and he testified by shaking his head in the negative, indicating that he did not intend to answer any questions. The prosecutor then asked the trial court to instruct the jury that McDole had been dismissed by the court as a witness and defense counsel objected. The court stated to defense counsel, "You want to stand up and beat the drum on why he didn't testify? You can't have your cake and eat it too." Defense counsel responded that his objection was based on the fact that he did not have a chance to cross-examine the witness; the prosecutor responded that defense counsel had just had that opportunity. Defense counsel stated that the witness did not say anything; however, the trial court acknowledged that the defense counsel "didn't know because [he] didn't ask any questions." The trial court then overruled defense counsel's objection stating, "I have got to tell [the jury] something." The trial court instructed the jury that Jessie McDole would not be a witness during the trial.
Thereafter, during the testimony of Detective Owings, the defense counsel objected to the witness's testimony that he received information from McDole and that McDole had knowledge of the "keys" to the crime. Defense counsel objected on the grounds of hearsay. The following transpired during the direct testimony of Detective Owings:
 "Q [Prosecutor]: Now, sir, in the course of your duties with the investigation in this case, did you have occasion to come in contact with one Jessie McDole?
"A I did.
 "Q Did you have occasion to have a conversation with him as that time?
"A I did.
 "Q And did you, sir, have occasion to go over these keys in that conversation?
"A I did.
 "Q On this occasion, sir, can you tell us if you received any information . . . during that conversation?
"A I did.
 "Q And what information did you receive in that conversation, sir, concerning these keys? *Page 26 
"[Defense counsel]: I object. Hearsay.
"THE COURT: From whom?
"[Prosecutor]: McDole, Your Honor.
 "THE COURT: Well, it's not being offered for the truth and veracity. It's just information he received in the course of his investigation. I'll let it in on that basis.
 "[Defense counsel]: I object again. It's hearsay and it denies me confrontation. It denies me the right to confront the person who supposedly said these things.
 "Q (Continuing): Let me ask a further question, if I may. This was the discussion concerning these keys with Mr. McDole; is that correct?
"A Yes.
 "Q Did he, or did he not, have knowledge of these keys that you have discussed with him?
"[Defense counsel]: I object. This is hearsay.
 "THE COURT: You have a continuing objection. I ruled on it.
"Q (Continuing): You may answer.
"A Yes, he had knowledge of these keys.
"Q Alright. Thank you."
The appellant argues that by allowing Detective Owings to testify, the trial court denied him his right of confrontation, citing Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074,13 L.Ed.2d 934 (1965) (wherein the Court allowed a State's witness to read the non-testifying accomplice's prior written confession to the jury). No such violation of the appellant's right to confrontation occurred in the present case. No testimony was given concerning the nature of the keys, how McDole came to have knowledge of these keys, and no testimony was given that would implicate the appellant. Thus, the appellant suffered no prejudice. Therefore, any error in allowing this testimony into evidence constituted harmless error. Rule 45, A.R.App.P.
 VII
The appellant argues that the trial court erred in allowing Officer Sherrer testify about his contact with the appellant, because his testimony called the appellant's character into issue. At trial, the appellant objected to any testimony from Officer Sherrer on the grounds that such testimony would call his character into issue, because the officer's contact with him had been as the result of appellant's arrest for shoplifting. Defense counsel argued that, no matter what other purpose the officer's testimony might have, it would clearly be prejudicial to the appellant. The State responded that the issue of the appellant's whereabouts at the time of the crime had been put at issue by the appellant's previous statement, indicating that he had been in Wilcox County, rather than in Selma, at the time of the offense. The trial court stated that testimony concerning the unrelated shoplifting might be prejudicial and that the State should confine the testimony to indicating that the officer "came into contact" with the appellant in Selma three days after the crime.[1] Although the State further sought to introduce into evidence the arrest record, which stated that the appellant was in Selma on September 29, the trial court held that the State could not do so, and the record indicates that the arrest was never admitted into evidence. Subsequently, Officer Sherrer was allowed to testify that, on September 29, 1986, at about 12:50 p.m., "he came into contact" with the appellant. Clearly, as the trial court indicated outside the presence of the jury, the terminology "came into contact" does not necessarily imply an arrest or conviction. Thus, the officer's testimony was not due to be excluded, because his testimony that he "came into contact" with the appellant does not constitute evidence of the appellant's bad character. C. Gamble, McElroy's AlabamaEvidence § 26.01(1), § 69.01(1) (3d ed. 1977).
 VIII
The appellant argues that the trial court erred in allowing into evidence a composite *Page 27 
drawing prepared by a police officer working with the description given by an eyewitness. This eyewitness had seen a man under the murder victim's carport around the time of her murder. There was evidence presented that the witness had not been satisfied with the results of the composite drawing and that the drawing was not distributed to the community at large, but rather distributed only within the police department. The trial court allowed the composite drawing into evidence over the appellant's objection.
Because the eyewitness's identification of the appellant was a central issue to the case, the composite drawing was relevant to the jury's consideration of the reliability and credibility of the eyewitness's identification. See discussion at Issue V herein. A trial judge's determination to admit certain evidence as relevant will not be overturned on appeal absent an abuse of discretion. C. Gamble, McElroy's Alabama Evidence § 21.01(1)(2) and (6) (3d ed. 1977). "We do not find the trial judge abused his discretion here. 'A fact is admissible into evidence if it has any probative value, however slight, upon a matter in the case.' " Primm v. State, 473 So.2d 1149, 1157
(Ala.Cr.App. 1985).
 IX
The appellant argues that the trial court erred in admitting evidence of his arrest warrant at trial, on the grounds that it was hearsay. The record indicates that during the testimony of Detective Robert Jacobs, the following transpired:
 "Q All right, sir. Now, after speaking with Mr. Evans, did you at some point in time swear out a warrant for the arrest of Mr. Huff for the offense of murder of Mrs. Hatcher?
"A Yes, sir.
 "Q I show you State's Exhibit No. 53, and I ask you if that's a copy of the warrant that you swore out before a Magistrate?
 "MR. McNEILL: I object to that. That doesn't have any relevancy to this case. It's not a vehicle that brings us here.
"THE COURT: Can I see it, please.
"MR. GREENE: This is the warrant, Your Honor.
"THE COURT: Overruled.
 "Q (Continuing:) I show you State's Exhibit No. 53. This in fact, is this in fact a copy of the warrant you swore out on that occasion?
"A Yes, it is.
"Q And the date of that?
"A October 30th.
 "Q And what, sir, was the probable cause that you have cited or cited to the Magistrate for this warrant, sir?
 "A That I had interviewed the witness, Donald Evans, who had informed me that the Defendant, Darren Huff, had —
 "MR. McNEILL: objection to what had been told to him by Donald Evans. It's hearsay.
 "MR. GREENE: Only what is on the warrant, sir. That's all I'm asking.
 "MR. McNEILL: I object to it coming in from that standpoint. It's still hearsay.
"THE COURT: Overruled.
"Q (Continuing): Go ahead.
 "A That I had interviewed a witness, Donald Evans, who had informed me that he was told by the Defendant, Darren Huff, that Huff was involved in the killing of an elderly lady and that I had also interviewed a witness, Alphonso Reese, who identified Darren Huff as the person he saw at Minnie Hatcher's residence on September 26, 1986, the date that Minnie Hatcher's body was discovered."
Thereafter, Jacobs testified, without objection, to Alphonso Reese's identification of the appellant from a photographic array.
The testimony that was admitted over the appellant's hearsay objection concerning the contents of the statements given by the two interviewed witnesses was clearly hearsay. Cf.Thomas v. State, 520 So.2d 223, 226 (Ala.Cr.App. 1987) (wherein a deputy was properly allowed to identify people he had talked with and places he had gone because the "fact of the conversations in this case was offered to explain the officer's *Page 28 
actions and presence at the scene" and the witness "was not permitted to testify to the content of those conversations"). However, although the testimony constituted inadmissible hearsay, because the testimony was cumulative of the testimony of Detective Jacobs concerning Alphonso Reese's identification of the appellant as the person he saw at the victim's residence and the testimony of Donald Evans, the error was harmless. The record indicates that Evans testified immediately following this witness that, after the offense, the appellant came to his home, made a telephone call, and then told Donald Evans that he needed to leave town because "he was in an old lady's murder." This testimony was admitted without objection from the appellant. See Weaver v. State, 564 So.2d 1007
(Ala.Cr.App. 1989) (wherein it was held that because the interviewed witness "had already admitted to making every material allegation contained in the arrest warrant and affidavit, without objection by the appellant, the admission of those documents into evidence was without error"). Therefore, because the testimony concerning the identification of the appellant by the eyewitness, Alphonso Reese, was proper, see discussion at Issue V herein, and because Evans's testimony was admitted without objection, we find no reversible error in the trial court's allowing Detective Jacobs to testify concerning statements made by these witnesses.
 X
The appellant argues that the trial court erred by refusing to give his requested jury instruction on reasonable doubt. The defendant's requested charge read as follows:
 "Reasonable doubt is such doubt that would cause a reasonably prudent person to hesitate in the conduct of their own personal affairs."
The record indicates that the trial court thoroughly instructed the jury concerning the principles of the reasonable doubt standard. Parker v. State, 516 So.2d 859 (Ala.Cr.App. 1987). A trial court does not commit prejudicial error in refusing to give a defendant's requested charge when the trial court's oral charge substantially and fairly covers the principles embodied in the requested charge. Harris v. State, 539 So.2d 1117
(Ala.Cr.App. 1988). Therefore, we find no abuse in the trial court's refusal to give the appellant's requested charge.
 XI
The appellant argues that the trial court erred in allowing the prosecutor, during his closing arguments, to comment on the appellant's appearance and, thereafter, in refusing to give a jury charge on the appellant's right not to testify following the jury's question during their deliberation. The record indicates that, during the closing argument by the prosecutor, the following occurred:
 "[Prosecutor]: . . . The defendant over here, right there with the cross hanging down and dots in his head —
 "[Defense counsel]: Objection to referring to the Defendant in that manner.
"THE COURT: Overruled."
The appellant claims that this argument was a reference to his failure to testify; however, the appellant specifically objected at trial to the prosecutor's argument as improperly "referring to the Defendant in that manner." By failing to object at trial on this ground that the standard was an impermissible reference to the appellant's failure to testify the appellant has waived this argument on appeal. Fisher v.State, 439 So.2d 176 (Ala.Cr.App. 1983).
The record indicates that, after jury deliberations had begun, the jury sent out a question asking why the appellant did not take the witness stand on his own behalf and why Jessie McDole did not testify in the case. Outside the hearing of the jury, the trial judge stated that it was his "immediate reaction" that "[the jury has] have heard all evidence that has been offered and [is] not to speculate or conjecture as to the answers to these two question." The State responded that it would be agreeable with such a charge, and the defense counsel requested that the court again charge the jury that the defendant does not have to testify against himself. The prosecutor *Page 29 
responded that to do so would unduely emphasize the fact that the appellant did not testify and would call attention to "the question of McDole's testimony." The trial court agreed. The record indicates that at the bottom of the written questions submitted by the jury, the trial court wrote: "You have heard all the evidence. You may not speculate or conjecture as to the above questions. You must decide the evidence on the evidence before you."
The record indicates that, prior to the trial court's oral charge to the jury, the appellant did not request a charge on his right not to testify and that no such charge was given. The appellant now argues that the statement made by the prosecutor referring to his appearance drew attention to the appellant's failure to testify and, therefore, after the jury asked why he did not testify, the trial court should have responded by giving the appellant's requested charge. The trial court answered the jury's question by informing them that they were not to "speculate or conjecture" as to the appellant's failure to testify. A trial court's refusal to give a requested charge to the jury on the effect of the appellant's failure to testify constitutes reversible error. Wolfe v. State, 555 So.2d 330,332 (Ala.Cr.App. 1989); Popwell v. State, 522 So.2d 12
(Ala.Cr.App. 1988); Peoples v. State, 510 So.2d 554
(Ala.Cr.App. 1986), affirmed, 510 So.2d 574 (Ala. 1987), cert. denied, 484 U.S. 933, 108 S.Ct. 307, 98 L.Ed.2d 266 (1987). The trial court's response to the jury's question informed the jurors that they were not to consider the appellant's failure to testify and that they were to base their decision only on the evidence. The trial court's charge did not, however, clearly inform the jury that the appellant had a constitutional right not to testify. Because the trial court's charge did not fully explain the law and because in light of the jury's question the error can not be deemed harmless, this cause is due to be reversed and remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur except BOWEN, J., who concurs in result only without opinion.
[1] The State's previous witness had just testified that the appellant was in Selma two days prior to the offense, by testifying concerning complaint filed by the appellant, which the officer had investigated.